[Cite as *State v. Harris*, 2018-Ohio-2338.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. L-17-1070 |
| Appellee | Trial Court No. CR0201402985 |
| v. | |
| Randall W. Harris | **DECISION AND JUDGMENT** |
| Appellant | Decided: June 15, 2018 |

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a June 9, 2015 judgment of the Lucas County Court

of Common Pleas, finding appellant guilty of one count of domestic violence, in violation

of R.C. 2919.25(A), and one count of felonious assault, in violation of R.C.

2903.11(A)(1).

{¶ 2} On June 29, 2015, appellant was sentenced to a 14-month term of incarceration for the domestic violence conviction, and a four-year term of incarceration for the felonious assault conviction, ordered to be served consecutively. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 3} Appellant, Randall W. Harris, sets forth the following two assignments of error:

I. The trial court erred when it denied defendant-appellant's motion for acquittal pursuant to Criminal Rule 29.

II. Appellant's conviction for domestic violence was against the manifest weight of the evidence.

{¶ 4} The following undisputed facts are relevant to this appeal. This case arises from appellant's physical attack of his wife at their marital home following appellant's perception that the victim had been unfaithful.

{¶ 5} On June 8, 2015, a two-day jury trial commenced. At trial, the victim testified that she was married to appellant at the time of the incident and they resided in the upper level of a Toledo duplex owned by the victim's parents. The parents lived in the lower level unit. On December 7, 2014, appellant accused the victim of wearing a t-shirt that, "came from another guy." Appellant grew highly agitated, and accused the victim of infidelity.

{¶ 6} On December 8, 2014, the morning after the above-described incident, the victim awoke to find appellant, "slapping me and he told me that he knew I still had a

2.

Myspace account and that I had been cheating on him our whole marriage and that I lied to him the whole time."

{¶ 7} The victim testified that when she attempted to get up, appellant violently pushed her back down onto the bed. In response, the victim picked up her phone to seek help but appellant, "smacked it out of her hand." The victim then testified that, "[the] next thing I know [appellant] punched me so hard in the face. It took my breath away and I [saw] black." The victim described the balance of the incident as:

> And then we–we tussled and we fell on the bed. He then got on top of me and he started to strangle me, and he told hi[m]self, he said, "Randall kill this bitch." He said, "You put this bitch down, man, put her down." And in my head I said, oh, my God. I said, Lord please give me the strength to get out of this bed. He is really going to hurt me.
>
> * * *
>
> And he is still on the bed, and he stood above me and he was like, "You kicked me." I said, "You tried to kill me." And next thing I know his boot went right in my face.
>
> I felt like I was going to pass out, and I asked God in my head to not let me because if I passed out I was afraid he was going to kill me. And my–finally I made my way off the bed and I ran to the front room, and he grabbed me by my hair and threw me on the couch. And he slapped me.

3.

And this happened three times. Me going to the door and at the same time I am screaming trying to yell for my mom. And he was like, "Ain't nobody going to hear you."

{¶ 8} Due to concerns about appellant, the victim and her mother previously established a protocol that if there was an emergency situation, the victim would stomp on the floor forcefully three times to alert her mother in the apartment below to seek help. During the attack by appellant, the victim did stomp on the floor three times.

{¶ 9} The victim's mother next testified. She confirmed that on December 8, 2014, she heard, "some commotion going on upstairs above me" and immediately knew something was wrong. When she went to see what was going on, the victim had already made her way downstairs to her mother's door. The victim looked, "frightened, scared, and very pale." The victim screamed to her mother that appellant had just tried to kill her and then she called 9-1-1.

{¶ 10} Shortly thereafter, the police responded to the victim's residence. The responding officer found the victim crying and upset. He testified that the victim was, "rubbing her left eye," which appeared to be, "pinkish in color with a little bit of swelling." The officer next went upstairs to locate appellant. Appellant was arrested for domestic violence and violating a protection order.

{¶ 11} In addition, a squad of firefighters arrived at the residence to provide any necessary medical attention. One of the responding firefighters testified that the victim, "had pain and swelling to the left eye." He encouraged the victim go to the hospital for

4.

medical evaluation. She declined to go at that time but stated that her mother could take her later on if it was necessary.

{¶ 12} After the emergency responders left, the victim continued to experience constant sharp pain in her left eye. Accordingly, the victim's mother transported her to Bay Park Hospital where she received two CAT scans. The first revealed, "left eye orbital fractures involving the orbital floor and a nose fracture." The second scan revealed that the victim had suffered, "blowout fractures left orbit." The victim's severe injuries resulted in chronic pain prompting her to seek a pain specialist for continued localized pain and headaches.

{¶ 13} Notably, the victim testified that prior to trial appellant sent her letters encouraging her to recant and give false statements to the prosecutor on appellant's behalf.

{¶ 14} After the prosecution rested, appellant testified on his own behalf. Despite overwhelming evidence to the contrary, appellant denied causing the victim's injuries. Appellant unilaterally implied, without supporting evidence, that some unknown intervening event and/or person had occurred causing the victim's injuries.

{¶ 15} Ultimately, the jury was not persuaded by appellant's unsupported testimony. Appellant was found guilty on both counts. This timely appeal ensued.

{¶ 16} In the first assignment of error, appellant argues that his motion for acquittal was improperly denied by the trial court. We do not concur.

5.

**{¶ 17}** A Crim.R. 29 motion for acquittal challenge is reviewed on a sufficiency of the evidence basis. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. As such, we review this assignment of error under the same standard used in determining if a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

**{¶ 18}** Whether there is sufficient evidence to support a conviction is a matter of law. *State v. Thompkins*, 78 Ohio St.3d, 380, 386, 678 N.E.2d 541 (1997). In evaluating a sufficiency of the evidence claim, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The appellate court's function is to examine the evidence admitted at trial such that, if it is believed, it would reasonably convince the average mind of the defendant's guilt. *Id.*

**{¶ 19}** We now consider whether the evidence presented at trial was sufficient to convict appellant. R.C. 2919.25(A) establishes that domestic violence is, "knowingly causing or attempting to cause physical harm to a family or household member." R.C. 2903.11(A)(1) establishes that felonious assault occurs when one, "causes serious physical harm to another or another's unborn."

**{¶ 20}** Here, the victim furnished persuasive, detailed testimony demonstrating that appellant inflicted the serious physical injuries sustained by the victim. The

6.

testimony was corroborated repeatedly by the testimony of the victim's mother, the emergency responders, the 9-1-1 recording, and the medical records.

{¶ 21} Based upon the foregoing, we find that the record encompassed ample evidence from which a rational trier of fact could find the elements of the offenses proven beyond a reasonable doubt. Accordingly, the evidence presented was sufficient. The trial court properly denied appellant's motion for acquittal. Wherefore, we find appellant's first assignment of error not well-taken.

{¶ 22} In the second assignment of error, appellant asserts that the convictions were against the manifest weight of the evidence. We do not concur.

{¶ 23} When reviewing a manifest weight of the evidence challenge, the appellate court sits as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Accordingly, we make a factual determination regarding the evidence in the case by reviewing the entirety of the record and inferences drawn therefrom, weighing the evidence and considering the credibility of the witnesses. *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *Thompkins* at 387.

{¶ 24} Ultimately, the court must decide, in resolving any conflicts in the evidence, whether the trier of fact, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* In this capacity, we reverse a conviction on manifest weight grounds for only the most

7.

"exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387.

{¶ 25} In the manifest weight challenge, appellant contends that the prosecution failed to proffer enough evidence to eliminate a reasonable doubt of his innocence. The record of evidence does not bear out appellant's position.

{¶ 26} Despite appellant's arguments to the contrary, the unrefuted evidence supporting the verdict includes the victim's testimony, the victim's mother's corroborating testimony, the 9-1-1 recording, the consistent testimony of the first responders, the medical records, and the exhibits of injuries.

{¶ 27} In contrast, appellant has suggested, without supporting evidence, that the victim's injuries occurred later and were caused by an unknown, intervening party. There is no evidentiary support for this claim. It constitutes nothing beyond a speculative theory and cannot contravene the opposing weight of the evidence.

{¶ 28} Appellant has failed to demonstrate that the trier of fact clearly lost its way and created a manifest miscarriage of justice. Wherefore, we find appellant's second assignment of error not well-taken.

{¶ 29} Based upon the foregoing, the judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

8.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                     _____
                                                     JUDGE

Thomas J. Osowik, J.

                                        _____
James D. Jensen, J.                                      JUDGE
CONCUR.

                                        _____
                                                     JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.