[Cite as *State v. Williams*, 2018-Ohio-622.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

    Appellee

v.

Joshua Williams

    Appellant

Court of Appeals No. L-17-1063

Trial Court No. CR0201602977

**<u>DECISION AND JUDGMENT</u>**

Decided:  February 16, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Patricia Horner, for appellant.

* * * * *

**JENSEN, J.**

{¶ 1} Joshua Williams appeals from a judgment of conviction and sentence following a jury verdict finding him guilty of trespass into a habitation in violation of R.C. 2911.12(B) and (E), a felony of the fourth degree.  For the following reasons, we affirm the judgment of the Lucas County Court of Common Pleas.

**{¶ 2}** Kelly Barney resides with her significant other, James Stoddard. In the early morning hours of October 18, 2016, Kelly awoke to see a man crawling on his hands and knees near the bed she shares with James. The television was on, but the room was dark. Kelly was unable to see the intruder's face. She could see, however, that the intruder was a black man of average height and build wearing a dark stocking cap, gray sweatpants, and a dark t-shirt. The t-shirt had words—although she did not read what it said—and pictures of tools on it. Kelly focused on the picture of the tools.

**{¶ 3}** Kelly grabbed James and asserted, "James, someone's in the house." The intruder stood up, looked at Kelly, and ran out the door. James jumped out of bed and gave chase out the back door, wearing only his underwear. James ran down one side of the outside of the home and into the backyard, but did not see anyone. James went back into the home and got dressed. He put on his glasses, grabbed his phone and pistol, and went out to his truck. He began driving through the neighborhood in search of the intruder.

**{¶ 4}** Meanwhile, Kelly took the dog out of its crate. The dog "started growling and pointing at the front door." Kelly yelled out, "who is out there," and a man answered, "I was just looking for a friend." Kelly put a bullet in the chamber of her handgun and yelled, "Get off my property, I have a gun." Kelly called James on his mobile and exclaimed, "He's on the front porch." Moments later, Kelly opened the front

2.

door and saw a person wearing gray sweats, a dark shirt, and a dark hat walking away from the house.

{¶ 5} At about the same time, James drove up to the house in his truck. As he approached, he saw a man with gray sweatpants, a black shirt and a dark cap walk off his front porch. As James parked, the man ran up to the passenger window of the truck. James pointed the gun at the man and said, "Someone was in my home. Was it you?" The man put his hands up. James stated, "I've called the police, they'll be here in a minute." The man then took off down the street. James went into the house to check on Kelly. She was shaking and crying.

{¶ 6} James called 911. Officers arrived at the home "within minutes."

{¶ 7} A few minutes later, appellant made a call to 911 from the Circle-K down the street from James and Kelly's home. At the time police officers reported to investigate the Circle-K 911 call, appellant was wearing gray sweatpants, a black t-shirt, and a black stocking cap. Depicted on the t-shirt were several hand tools and the words "THERE IS NO SUCH THING AS TOO MANY TOOLS." Officers at the Circle-K contacted officers at James and Kelly's home to inform them they found a man who matched the description from the home invasion.

{¶ 8} Consequently, less than 30 minutes after the officers arrived at James and Kelly's home, officers asked James to accompany them to the Circle-K to identify someone they had just found that fit the description of the alleged intruder. As James

3.

rode past the Circle-K in a police car, he identified appellant as the man who had been on the front porch of his home. Appellant was taken into custody.

{¶ 9} At trial, both Kelly and James testified that they lock their doors and turn out the lights every night before they go to bed. Kelly testified that when she awoke just after 1:00 a.m. on October 18, 2016, she was "face-to-face with someone on their hands and knees crawling right next to [the] bed." Kelly described the clothing the intruder was wearing. When the state showed Kelly photographs of clothing appellant was wearing at the time of his arrest, Kelly indicated that the clothing in the photograph "looks exactly like what the fella that was crawling on my bedroom floor was wearing." She stated, "The shirt I remember specifically because it had tools on it, and then that's – I manage maintenance all day long. That's the thing that just stuck."

{¶ 10} James testified that he only saw "a shadow" run out the door of their bedroom. He could not positively identify appellant as the intruder. He could, however, positively identify appellant as the man who had been on his front porch and the man who was with the police at the Circle-K.

{¶ 11} When the state showed James the clothing appellant was wearing at the time of his arrest, James indicated that he was "positive" the clothing in the exhibit was the same clothing the man on his front porch—and the man found at the nearby Circle-K—was wearing on October 18, 2016.

{¶ 12} After closing argument, the trial court instructed the jury on the elements of trespass into a habitation. After deliberations, the jury returned a verdict of guilty.

Appellant was sentenced to 16 months in prison. Appellant now appeals, assigning two errors for our review:

 I. THE STATE FAILED TO PROVE ALL ELEMENTS OF THE CRIME CHARGED.

 II. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} "Sufficiency and manifest-weight challenges are separate and legally distinct determinations." *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 17 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." *State v. Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317, ¶ 28, citing *Thompkins* at 387. When reviewing for the sufficiency of the evidence, an appellate court's function is to "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

5.

**{¶ 14}** "A manifest weight of the evidence challenge contests the believability of the evidence presented." *State v. Wynder*, 11th Dist. Ashtabula No. 2001-A-0063, 2003-Ohio-5978, ¶ 23. When determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility, and decide whether in resolving any conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *Thompkins* at 387.

**{¶ 15}** "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *State v. Vencill*, 10th Dist. Franklin No. 11AP-1050, 2012-Ohio-4419, ¶ 9 (citations omitted).

**{¶ 16}** R.C. 2911.12(B) provides that "[n]o person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."

**{¶ 17}** Here, appellant argues that while he could be identified as the person outside James and Kelly's house, the state failed to prove beyond a reasonable doubt that appellant was in James and Kelly's bedroom. We disagree.

6.

**{¶ 18}** The evidence presented by the state is sufficient to tie appellant to the crime despite neither Kelly nor James being able to positively identify appellant as the man who was crawling on their bedroom floor. First, Kelly was able to describe, in detail, what the man in her home was wearing. At trial, she indicated, with certainty, that the clothing appellant was wearing at the time of his arrest was identical to the clothing the man in her bedroom was wearing. Second, minutes after the intruder ran out of the home, a man was seen by both Kelly and James on their front porch. James testified that the man on the front porch was wearing gray sweatpants, a black shirt with writing, and a black cap. When shown the clothing appellant was wearing at the time of his arrest, James indicated that the clothing was identical to the clothing worn by the man on his front porch. In a drive-by, one-on-one, James identified appellant as the man who had been on his front porch. At trial, James identified appellant as the man who came off his porch and up to the passenger window of his truck.

**{¶ 19}** Considering all this evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. A reasonable fact finder could have inferred, and found beyond a reasonable doubt, that appellant was the man in Kelly and James' home. Appellant's conviction is not against the manifest weight of the evidence. This resolution is also dispositive of appellant's claim that his conviction was not supported by sufficient evidence. Thus, appellant's first and second assignments of error are not well-taken.

7.

**{¶ 20}** The judgment of the Lucas County Court of Common Pleas is affirmed.

Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                                               _____

                                                                     JUDGE

James D. Jensen, J.

                                              _____

Christine E. Mayle, P.J.                                              JUDGE
CONCUR.

                                              _____

                                                                     JUDGE

8.