[Cite as *State v. Liggens*, 2018-Ohio-2431.]

# IN THE COURT OF APPEALS OF OHIO

## SIXTH APPELLATE DISTRICT
## SANDUSKY COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

LARRY LIGGINS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No.** 16 CAS 32.

---

Criminal Appeal from the
Court of Common Pleas of Sandusky County, Ohio
Case No. 15-CR-944

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite, Judges.
Sitting by assignment

**JUDGMENT:**
Reversed and Vacated in part; Affirmed in part.

---

*Atty. Michael Dewine*, Ohio Attorney General, *Atty. Christopher L. Kinsler*, Associate Assistant Attorney General, 150 E. Gay St. 16th Floor, Columbus, Ohio 43215 for Appellee and

*Atty. Andrew R. Mayle*, Mayle Ray & Mayle LLC, 210 South Front Street, Fremont, Ohio 43420 for Appellant.

Dated:  June 22, 2018

---

**ROBB, P.J.,**
**sitting by assignment**

{¶1}    Defendant-Appellant Larry Liggins appeals from his engaging in a pattern of corrupt activity and drug trafficking convictions entered in Sandusky County Common Pleas Court.  Appellant sets forth six arguments as to why his conviction should be reversed.  First, Appellant contends the trial court erred in allowing the state to amend the indictment.  Second, he argues the jury instruction defining "engaging in a pattern of corrupt activity" was incorrect and the trial court incorrectly indicated he could be found guilty based on the jury finding him guilty of a single underlying felony. Third, Appellant asserts the state did not meet its burden of production.  Fourth, he contends the verdicts were against the manifest weight of the evidence.  Fifth, he argues he cannot be guilty of a second-degree felony engaging in a pattern of corrupt activity because he was not indicted for that offense and that offense is not the lesser included offense of first-degree felony engaging in a pattern of corrupt activity (which was the indicted offense).  Lastly, he asserts trial counsel was ineffective and he was deprived of a fair trial.

{¶2}    The dispositive issue in this case is whether the state presented sufficient evidence to support the conviction for engaging in a pattern of corrupt activity.  For the reasons expressed below, we hold that it did not meet its burden of production. The conviction for engaging in a pattern of corrupt activity is reversed and the sentence for that crime is vacated.  The remaining convictions are affirmed.

Statement of the Case and Facts

{¶3}    Appellant was indicted for one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A) and five counts of drug trafficking in violation of R.C. 2925.03.  9/23/15 Indictment.  The engaging in a pattern of corrupt activity charge was a first-degree felony and contained a specification that at least one of the incidents of corrupt activity was a felony of the first, second, or third-degree.  This charge also indicated the offense occurred between June 18, 2014 and July 30, 2014 and that the incidents of corrupt activity were stated in the remaining charges of the indictment.  The

five drug trafficking counts were for differing degrees of felonies based on the weight of the cocaine trafficked. The second count of the indictment was a fourth-degree felony for an incident occurring on July 5, 2015. The third count was a fifth-degree felony for an incident occurring on July 6, 2015. The fourth count was a fifth-degree felony for a second incident occurring on July 6, 2015. The fifth count was a third-degree felony for an incident occurring on July 17, 2015. The sixth count was a third-degree felony for an incident occurring on July 20, 2015. The state filed a bill of particulars that was similar to the indictment. 1/5/16 Bill of Particulars.

{¶4} Appellant pled not guilty to the indictment. 9/25/15 J.E. Prior to trial, the state dismissed count six of the indictment and moved to amend the indictment pursuant to Crim.R. 7. 4/13/16 Motion to Dismiss; 7/6/16 Motion to Amend Indictment. In the motion to amend the indictment, the state asserted there were typographical errors in counts two through five. Those counts indicated the criminal activity occurred in 2015; however, the indictment should have indicated the activity occurred in 2014. 7/6/16 Motion to Amend. The state moved to amend count two to indicate the offense occurred on July 5, 2014, count three occurred on July 6, 2014, court four occurred on July 6, 2014, and count five occurred on July 17, 2014. 7/6/16 Motion to Amend. The trial court granted the motion to amend. 7/7/16 J.E.

{¶5} The jury trial commenced on July 14, 2016. At trial evidence was submitted that Keith Nettles was the primary drug trafficker in the Fremont, Sandusky County, Ohio area in 2014. Tr. 136. Various people worked for Nettles including Appellant and Deborah Wolverton. During the Fremont Police Department's and the Drug Task Force's investigation of Nettles in 2014, they obtained a wiretap for his phone. Various recorded phone calls were played for the jury during the trial and it was stipulated at trial that one of the numbers Nettles called was Appellant's. Wolverton also testified at trial. She explained that Nettles was a drug dealer, her boyfriend, and kept drugs at various locations in her house and yard. Tr. 84, 91. She testified Appellant delivered drugs to people for Nettles. Tr. 86. She identified Nettles' voice and Appellant's voice on some of the calls. She and Special Agent Mike Noel from the Toledo DEA explained the terms used during the calls.

{¶6} The first set of calls played for the jury were from July 5, 2014. Tr. 90-91, 139-140. The first two calls on that date were between Nettles and Wolverton. Tr. 90-

91, 139-140.  They were talking about "two 6's," which was explained to be two packages of six grams of cocaine.  Tr. 91.  The street value of "two 6's" is $600, which means each 6 is $300.  Tr. 140-141.  Nettles told Wolverton to get the drugs from her house and give them to Appellant and Appellant would deliver them to Darnell at a bar called the Copper Penny.  Tr. 94-95.  The next call played was a call between Appellant and Nettles.  Upon hearing this call, Wolverton explained Nettles was telling Appellant that she was supposed to give him something to deliver.  Tr. 97.

{¶7}    The next set of calls played were from July 6, 2014.  These calls were between Nettles and Appellant.  Tr. 98-100, 142-144.  In the first two calls there was a reference to "two baseballs" – "you got to get two baseballs, one base – one, one baseball, the other want the other baseball."  Tr. 100.  Wolverton explained a "baseball" is three grams of crack similar to what is also referred to as an "8-ball" and the street value is $150 for one ball, baseball, or 8-ball.  Tr. 100, 103.  Agent Noel testified he had not heard of the term "baseball" before, and that it is usually referred to as a ball, which is 3.5 grams of cocaine.  Tr. 152.  Following those calls, Appellant and Nettles talked again.  Tr. 145.  In this call there was a statement that one of the buyers wanted another one.  Tr. 102, 145.   The next call was Wolverton to Nettles to see if she had permission to give Appellant another 8-ball to deliver, which she did. Tr. 104-105, 146.  The cost for these three 8-balls was $450.  Tr. 105.  Wolverton testified she personally handed the cocaine to Appellant to deliver.  Tr. 116, 122.

{¶8}    The next set of calls played for the jury were from July 17, 2014. Wolverton indicated these calls were between Nettles and another male whose voice she did not recognize and one call where Nettles was asking Appellant to go to his house. Tr. 106-107.  There was a discussion in one of the calls for people to meet at Five Guys and the unknown male wants "four."  Tr. 109.  Wolverton testified this meant the unknown male wanted four 8-balls, which would cost $600.  Tr. 110.

{¶9}    Appellant testified at trial.  He contended the calls either referred to him showing cars to potential buyers for Nettles or to baseball tickets.  He explained he did drive Nettles places, but he also explained that Nettles sold cars and Appellant would drive the cars to potential buyers so they could see the cars.  Tr. 175, 180, 198. Appellant stated he is a baseball fan and Nettles got him tickets to a Detroit Tigers baseball game. They could not attend the baseball game so he was delivering the tickets to someone

who could go. He testified the reference to baseball was a reference to the baseball tickets. Tr. 177-179.

**{¶10}** The jury found Appellant guilty of counts one through four of the indictment and not guilty of count five of the indictment. Thus, the jury found Appellant guilty of one fourth-degree felony drug trafficking offense, two fifth-degree felony drug trafficking offenses, and engaging in a pattern of corrupt activity. However, since the jury did not find Appellant guilty of count five of the indictment, a third-degree felony trafficking offense, it answered the enhancement to count one in the negative. The jury stated the state did not establish one of the incidents of corrupt activity was a third-degree felony.

**{¶11}** The court proceeded immediately to sentencing. The trial court sentenced Appellant to 96 months for engaging in a pattern of corrupt activity a second-degree felony. He received 18 months for the fourth-degree felony drug trafficking conviction and 12 months for each third-degree felony drug trafficking conviction. All sentences were ordered to be served concurrently for an aggregate sentence of 96 months.

**{¶12}** Appellant timely appealed the convictions. The third assignment of error will be addressed first since it is dispositive.

Third Assignment of Error

"The verdict under count one violates Liggins' due process rights because it is not supported by sufficient evidence as to the essential element of the monies involved exceeding $1,000. Nor is the verdict supported by the weight of the evidence."

**{¶13}** This assignment of error raises both sufficiency of the evidence and manifest weight of the evidence arguments.

**{¶14}** This court has recently explained:

"Sufficiency and manifest-weight challenges are separate and legally distinct determinations." *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 17 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." *State v. Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317, ¶ 28, citing *Thompkins* at 387. When reviewing for the sufficiency of the evidence, an appellate court's function is to

"examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

"A manifest weight of the evidence challenge contests the believability of the evidence presented." *State v. Wynder*, 11th Dist. Ashtabula No. 2001-A-0063, 2003-Ohio-5978, ¶ 23. When determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility, and decide whether in resolving any conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *Thompkins* at 387.

*State v. Williams*, 6th Dist. No. L-17-1063, 2018-Ohio-622, ¶ 13-14.

**{¶15}** In asserting there was insufficient evidence and the verdicts were against the manifest weight of the evidence, Appellant focuses on his conviction of R.C. 2923.32(A), engaging in a pattern of corrupt activity. Appellant focuses on the element of "pattern of corrupt activity." This element encompasses not only a pattern but a corrupt activity. Both "pattern of corrupt activity" and "corrupt activity" are statutorily defined. "Pattern of Corrupt Activity" is defined as:

(E) "Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

R.C. 2923.31(E).

R.C. 2931.23 defines "corrupt activity," in relevant part, as:

(1)"Corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:

* * *

(2) Conduct constituting any of the following:

(c) Any violation of section * * * 2925.03 * * * of the Revised Code * * * and that occurs on or after July 1, 1996 * * * when the proceeds of the violation, the payments made in the violation, the amount of a claim for payment or for any other benefit that is false or deceptive and that is involved in the violation, or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds one thousand dollars, or any combination of violations described in division (I)(2)(c) of this section when the total proceeds of the combination of violations, payments made in the combination of violations, amount of the claims for payment or for other benefits that is false or deceptive and that is involved in the combination of violations, or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations exceeds one thousand dollars.

R.C. 2923.31(I)(2)(c).

{¶16} We begin by reviewing the sufficiency of the evidence produced by the state. Appellant sets forth two arguments on appeal. Initially, he argued when the sales of the drugs are added together the cumulative amount of the sales do not exceed $1,000, and thus, there is no corrupt activity given the definition in R.C. 2923.31(I)(2)(c). The state countered asserting the cumulative value of the sales Appellant was convicted of amounted to $1,050. In Appellant's reply brief he admitted the sales do exceed $1,000; he admittedly made a mathematical miscalculation.

{¶17} A review of the evidence submitted at trial indicates the proceeds for the three trafficking convictions amounted to $1,050. The transaction that occurred on July 5, 2014 was for two 6's (two six gram packages of cocaine) which totaled $600. Tr. 90-91, 140-141. Wolverton testified at trial that two of the calls from that day were between herself and Nettles. Tr. 90-91, 139-140. Nettles told Wolverton to get the "two 6's" from her house and give them to Appellant and Appellant would deliver to the buyer. Tr. 94-

The next call played was a call between Appellant and Nettles. In hearing this call, Wolverton explained Nettles was telling Appellant that Wolverton was supposed to give him something to deliver.  Tr. 97.

{¶18}  Two transactions occurred on July 6, 2014.  The first transaction on July 6, 2014 was for "two baseballs," which is two packages of 3 grams of cocaine.  Tr. 99-100. Each baseball is $150, for a total of $300.  Tr. 102-103, 152.  The second transaction on that day was for another $150 baseball.  Tr. 102, 104.  The calls relating to these two transactions were between Nettles and Appellant, and Nettles and Wolverton.  Tr. 98-100, 142-144, 145.  In the first two calls there was a reference to "two baseballs" – "you got to get two baseballs, one base – one, one baseball, the other want the other baseball." Tr. 100.  Wolverton explained a "baseball" is three grams of crack similar to what is also referred to as an "8-ball" and the street value was $150 for one ball, baseball, or 8-ball. Tr. 100, 103.  Agent Noel testified he had not heard of the term "baseball" before, and that it is usually referred to as a ball, which is 3.5 grams of cocaine.  Tr. 152.  Following those calls, Appellant and Nettles talked.  Tr. 145.  In this call there was a statement that one of the buyers wanted another one.  Tr. 102, 145.   The next call was Wolverton to Nettles to get permission for her to give Appellant another 8-ball to deliver.  Tr. 104-105, 146.  The cost for these three 8-balls was $450.  Tr. 105.  Wolverton testified she personally handed the cocaine to Appellant for delivery.  Tr. 116, 122.

{¶19}  Special Agent Noel's testimony at trial confirmed what a 6 ball and 8 ball were and confirmed the typical street value for each product.  Tr. 140-141, 152.  He also explained that during his career, he listened to many wire taps.  Tr. 146.  In this investigation there were over 3,400 calls and he never heard the word cocaine used. Tr. 146.  He explained that in his experience it is common for drug dealers to use euphemisms or slang for cocaine; "it's completely common to use code words to deter law enforcement from the actual content of the phone call.  That's why they use to call it baseballs, tennis shoes, whatever."  Tr. 146.

{¶20}  Consequently, considering this evidence, the state produced sufficient evidence that the proceeds from the three drug trafficking transactions occurring on July 5th and 6th exceeded $1,000.  The above evidence satisfies the state's burden of production; the state produced evidence that Appellant committed a corrupt activity.

{¶21} Appellant's second argument is that even if there was sufficient evidence of **a** corrupt activity, there was not sufficient evidence of a **pattern** of corrupt activity. He acknowledges that the July 5th and 6th drug transactions constitute a corrupt activity as defined by R.C. 2923.31(I)(2)(c). However, there was no other evidence presented of a **second** corrupt activity. He argues in order to be convicted of a pattern of corrupt activity there must be evidence of two or more corrupt activities. He contends the state did not produce any evidence of a second corrupt activity.

{¶22} In arguing the evidence is sufficient to support the conviction, the state does not appear to agree with Appellant's position that the proceeds of each corrupt activity must exceeded $1,000. The state appears to be of the position that a pattern of corrupt activity is shown when the evidence establishes the proceeds exceeded $1,000.

{¶23} The language of R.C. 2923.31 and R.C. 2923.32 is plain and unambiguous. The state's theory in this case was that the corrupt activities were drug trafficking in violation of R.C. 2925.03; although there are admittedly additional ways to constitute a corrupt activity, the indictment indicated the basis for the engaging in a corrupt activity charge was drug trafficking. The language of R.C. 2923.31 and R.C. 2923.32 is plain and clear. A pattern of corrupt activity requires two or more corrupt activities. R.C. 2923.31(E). In order for drug trafficking in violation of R.C. 2925.03 to constitute a corrupt activity the total proceeds of a violation of that statute or a combination of violations of that statute must exceed $1,000. R.C. 2923.31(I)(2)(c). When those definitions are read in conjunction with each other, in order for the state to establish a pattern of corrupt activity it must produce evidence of at least two corrupt activities where the proceeds of each corrupt activity exceeded $1,000. If the general assembly had intended for the pattern of corrupt activity proceeds to exceed $1,000, the "exceeds one thousand dollars" element would have been included as part of the definition of "pattern of corrupt activity," rather than as part of the definition of "corrupt activity." The General Assembly's deliberate act of defining "corrupt activity" means, at the minimum, the proceeds of "pattern of corrupt activity" must be at least $2,000.02, since the proceeds of each "corrupt activity" must at least be $1,000.01. Consequently, give the plain language of the statutes, we agree with Appellant's interpretation.

{¶24} As explained above, the July 5th and 6th drug transactions constituted a corrupt activity because Appellant committed drug trafficking offenses in violation of R.C.

2925.03 and the value of the drugs sold when committing those violations exceeded $1,000. Therefore, the state produced evidence and established one corrupt activity occurred.

**{¶25}** The state did present some evidence of an additional drug sale of four 8-balls for the price of $600. Tr. 110. The evidence, however, did not conclusively connect Appellant to this sale; the jury found him not guilty of that charge. Prior to trial, the state dismissed one drug trafficking charge, which may have in combination with the sale of the four 8-balls constituted the second corrupt activity and provided the basis for the engaging in a pattern of corrupt activity count of the indictment. Therefore, there may have been a basis at the time of indictment for engaging in a pattern of corrupt activity charge. However, there was no evidence produced at trial to establish a second corrupt activity in order to establish a pattern.

**{¶26}** Since there was no evidence produced of a second corrupt activity, Appellant's conviction for engaging in a pattern of corrupt activity is based on insufficient evidence. Since there is insufficient evidence, the manifest weight arguments are moot. The conviction for engaging in a pattern of corrupt activity must be reversed and the sentence vacated. This assignment of error has merit.

First Assignment of Error

"The trial court violated Liggins' rights under the Ohio and federal constitutions by erroneously permitting the state to amend counts two through five of the grand jury's indictment to cover different conduct than alleged in the indictment."

**{¶27}** This assignment of error addresses the state's motion to amend the indictment as it related to the drug trafficking charges and the trial court's decision to grant that motion.

**{¶28}** As aforementioned approximately two weeks prior to trial, the state moved to amend counts two through five of the indictment; these counts were the drug trafficking charges. Count two alleged the crime occurred on July 5, 2015 and the state wanted to amend the date to July 5, 2014. Counts three and four alleged the crimes occurred on July 6, 2015 and the state wanted to amend the date to July 6, 2014. Count five alleged the crime occurred on July 17, 2015 and the state wanted to amend the date to July 17, 2014. Thus, the amendment the state sought was a change in the year. The state contended the amendment was allowed pursuant to Crim.R. 7 and the wrong year in the

indictment and bill of particulars as to counts two through five were typographical errors. The trial court granted the motion.

{¶29} Appellant contends altering the dates changed the identity of the charges and were not merely typographical errors. Appellant heavily relies on *State v. Vitale*, 96 Ohio App.3d 695, 645 N.E.2d 1277 (8th Dist.1994) to support his position. Appellant did not object to the amendment of the indictment.

{¶30} Crim. R. 7(D) provides that a court may "at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." Courts have distinguished between modifications that change the name or identity of the charge and those that correct certain administrative errors, holding "[a] trial court may, pursuant to Crim.R. 7(D), amend an indictment to correct typographical or clerical errors." *Brecksville v. Bickerstaff*, 8th Dist. No. 102170, 2015-Ohio-5410, ¶ 13, citing *State v. Williams*, 10th Dist. No. 08AP–719, 2009–Ohio–3237, ¶ 12, *State v. Alexander*, 10th Dist. No. 06AP–647, 2007–Ohio–4177, ¶ 43–44, *State v. Moore*, 9th Dist. No. 19544, 2000 WL 422412 (Apr. 19, 2000); *State v. Cooper*, 4th Dist. No. 97CA2326, (June 25, 1998). The Ohio Supreme Court has explained, "[o]rdinarily, precise times and dates are not essential elements of offenses." *State v. Dubose*, 6th Dist. No. L-15-1194, 2016-Ohio-7883, ¶ 18, quoting *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985).

{¶31} In this case, the indictment itself indicates the use of the year 2015 in counts two through five was a typographical error. Count one of the indictment states:

> Between June 18, 2014 and July 30, 2014, in Sandusky County, Ohio, the defendant employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.
> * * *
> INCIDENTS OF CORRUPT ACTIVITY: stated in the remaining charges in this indictment and fully incorporated herein.

9/23/15 Indictment.

{¶32} Thus, the first count of the indictment indicates the remaining counts occurred within the time period set forth in the first count. Since count one used the year

2014 and counts two through five used the year 2015, it is logical to conclude that either 2014 or 2015 is a typographical error.

**{¶33}** Furthermore, as the state indicates the *Vitale* case Appellant relies on to support his position is distinguishable.   In that case, the Eighth Appellate District concluded the trial court erred in allowing the indictment to be amended:

> We find that the trial court erred in allowing the state to amend the indictment pursuant to Crim.R. 7(D) to change the date of the offense from June 14, 1991 to "June 14, 1991 through June 21, 1991 inclusive." The court stated that the defendant "wouldn't be misled or prejudiced by at least correcting that defect in that limited fashion." Despite the court's assurances, there is a grave risk **in this case** that defendant was convicted by the trial court of a felony on evidence that was not presented to the grand jury.

Emphasis added.   *Vitale*, 96 Ohio App.3d at 699.

**{¶34}** This statement indicates the decision was a case specific determination.

**{¶35}** Moreover, *Vitale* does not stand for the proposition that changing a date always means the identity of the crime has been changed.   In *Vitale*, the defendant was indicted for a theft offense alleged to have occurred on June 14, 1991, when he drove his car from the grounds of the repair garage without paying for its repairs.  *Id.* at 698. At the bench trial, the state presented evidence indicating that he originally had permission to take the car from the garage.   However, a week later the defendant took the car to the garage owner's home and left the car at the garage owner's home for corrections to the repairs.  *Id.*  Defendant returned a couple minutes later, reclaimed his car, and did not pay for the previous repairs.  *Id.*  The state moved to amend the indictment to include a different potential theft occurring at a different address, over an expanded period of time.  *Id.* at 699.  The trial court allowed the amendment over objection and found Vitale guilty of felony theft.  *Id.*  In reversing the conviction based on the fact that the time and place amendments "obviously" raised the specter that Vitale might have been convicted on facts not contemplated by the grand jury, the appellate court noted that, "[a]bsent language indicating the grand jury's intent to permit a conviction based on more than one incident of criminal conduct, a court cannot assume that a grand jury would have included in its indictment an additional incident of criminal conduct."  *Id.*

**{¶36}** The Eighth Appellate Court has distinguished the *Vitale* decision in many instances and in doing so it has stated, "In *Vitale*, the court determined that the amendment of the date range was a change to the identity of the crimes because the indictment was changed to reflect completely different crimes that occurred at different times and different places." *State v. Griffin*, 8th Dist. No. 80499, 2002-Ohio-4288, ¶ 57, citing *Vitale* at 700–701. *See also, State v. Honeycutt*, 2d Dist. No. 19004, 2002 WL 1438648. Furthermore, the Eighth Appellate District has upheld changes in dates when the changes are merely clerical. *State v. Dietz*, 8th Dist. Cuyahoga No. 81823, 2003-Ohio-3249, ¶ 17 (Purely clerical change when date was changed from March 1, 2002 to March 10, 2002.).

**{¶37}** Here, as indicated above, the date change was purely a clerical change. Appellant was clearly charged in count one with a pattern of conduct occurring between June 18, 2014 and July 30, 2014. That count clearly indicated the other charges in the indictment were incidents of the corrupt activity for count one. Thus, use of the year 2015 instead of 2014 in the indictment was a typographical error. Appellant, through discovery, was aware the phone calls attempting to prove counts two through five occurred in 2014 and those recorded phone calls coincided with the date range set forth in count one of the indictment.

**{¶38}** Consequently, since the date was a typographical error, date is not an essential element of the offense, and there was no objection this court concludes there is no merit with this assignment of error.

## Second Assignment of Error

"The trial court erroneously instructed the jury by failing to define 'corrupt activity' and telling jurors that they could reach a guilty verdict on the pattern-of-corrupt-activity charge based upon a single underlying felony. The court committed further prejudicial error by not maintaining the written jury instructions with the papers of the case in violation of R.C. 2945.10(G)."

**{¶39}** This assignment of error addresses jury instructions on engaging in a pattern of corrupt activity. Our reversal of the engaging in a pattern of corrupt activity conviction renders this assignment of error moot.

## Fourth Assignment of Error

"The trial court erroneously permitted the jury to convict appellant on the unindicted second-degree felony charge that is not a lesser included of any indicted charge."

**{¶40}** This assignment of error also addresses the soundness of the engaging in a pattern of corrupt activity conviction. Our reversal of the engaging in a pattern of corrupt activity conviction renders this assignment of error moot.

### Fifth Assignment of Error

"The verdict cannot stand because appointed trial counsel rendered ineffective assistance of counsel throughout the proceedings."

**{¶41}** The majority of the arguments set forth in this assignment of error are moot based on our reversal of the engaging in a pattern of corrupt activity conviction. The only argument that is not moot is the claim that trial counsel was ineffective for failing to object to the state's motion to amend the indictment. This argument solely addresses the drug trafficking convictions.

**{¶42}** To establish ineffective assistance of counsel, a criminal defendant must prove two elements: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Prejudice under *Strickland* requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of effective assistance, and to show deficiency, the party claiming such deficiency must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id.* at 689; *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

**{¶43}** As explained under the first assignment of error, although counsel did not object to amending the indictment, the trial court was permitted to amend the indictment to correct the typographical error. Thus, prejudice did not result from the alleged deficient performance of failing to object to the motion to amend the indictment. Therefore, Appellant cannot satisfy the requirements of *Strickland* and the ineffective assistance of counsel argument fails. This assignment of error is moot and/or lacks merit.

## Conclusion

**{¶44}** In conclusion, the first and fifth assignments of error lack merit. The second and fourth assignments of error are moot. The third assignment of error has merit. The conviction for engaging in a pattern of corrupt activity is not supported by sufficient evidence and is vacated and reversed. The remaining convictions are affirmed.


Donofrio, J., concurs.
The Seventh District Court of Appeals,
Sitting by assignment.

Waite, J., concurs.
The Seventh District Court of Appeals,
Sitting by assignment.

---

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that the first and fifth assignments of error lack merit; and the third assignment of error has merit. The conviction for engaging in a pattern of corrupt activity is not supported by sufficient evidence and is vacated and reversed. The judgment of the Court of Common Pleas of Sandusky County, Ohio, is affirmed for the remaining convictions. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**