The STATE of Ohio, Appellee,

v.

PRESCOTT, Appellant.

[Cite as *State v. Prescott,* 190 Ohio App.3d 702, 2010-Ohio-6048.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–09–085.

Decided Dec. 10, 2010.

Paul A. Dobson, Wood County Prosecuting Attorney, Gwen Howe–Gebers, Chief Assistant Prosecuting Attorney, and David E. Romaker Jr., Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

PIETRYKOWSKI, Judge.

{¶ 1} David Prescott II, appellant, appeals his conviction for the offense of assault on a police officer, a violation of R.C. 2903.13(A) and 2903.13(C)(3) and a fourth-degree felony. Prescott was convicted of the offense in a jury trial conducted in the Wood County Court of Common Pleas in September 2009. In a November 18, 2009 judgment, the trial court sentenced appellant to serve three years' community control with conditions for the offense.

{¶ 2} Appellant asserts three assignments of error on appeal.

## Assignments of Error

{¶ 3} "I. The trial court erred in instructing the jury that a private citizen may not resist arrest by a law enforcement officer through the use of force.

{¶ 4} "II. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Constitution of the State of Ohio.

{¶ 5} "III. Appellant's conviction was against the sufficiency and/or manifest weight of the evidence presented at trial."

{¶ 6} On February 21, 2009, Prescott was engaged in a fistfight in front of the Clazel, a bar in downtown Bowling Green, Ohio. Officers Terry Davis and Jeff Lowery, police officers of the Bowling Green Police Department, were on patrol nearby.

{¶ 7} Officer Davis testified that he was across the street from the bar issuing a citation at approximately 2:30 a.m., heard a commotion, and turned to see a fight in progress on the sidewalk across the street, 30 feet away. Davis testified: "I saw two people engaged in a fight, a fist fight. I moved to that location, pulled the people apart." Davis testified that the two men fighting were Prescott and another man named Avila.

{¶ 8} Davis testified that he announced more than once that he was a police officer and told the men to stop fighting. He separated them, at first holding Avila, but he lost his grip. Prescott continued to fight and punched Davis in the head. Davis testified that he tripped and fell to the ground with Prescott on top of him, face to face. Davis testified that Prescott continued to punch him while face to face. By this time, Officer Lowery arrived.

{¶ 9} Lowery testified that he was approximately ten seconds behind Davis in arriving at the location of the fight. As he arrived, Lowery yelled, more than once, "Police," and for the men to stop fighting. Lowery pulled Avila away. He testified that he saw appellant punching Officer Davis with his fist. Lowery

recalled that he was no more than five feet away when he saw appellant face to face with Davis and punching him.

{¶ 10} Lowery testified that Officer Garman and he pulled Prescott from Davis, instructed Prescott several times to stop fighting, and ultimately forced Prescott to the ground to restrain him. Lowery testified that the incident all happened "within a couple minutes."

{¶ 11} Katherine Brown[1] testified that before police arrived, a group of five men attacked Prescott and that when police did arrive, a crowd was yelling and no one knew what was going on. She saw a man wearing a black coat run into the fight and place a choke hold around Prescott. Brown identified Officer Davis as the man and testified that Davis was wearing a plain black jacket.

{¶ 12} Katherine Brown testified that at some point she was knocked to the ground and while on the ground saw a badge and realized that Prescott was on top of a police officer and struggling with him. She testified that Prescott rolled off the officer and stopped struggling once she told him: "David, it is okay, you are safe, you don't have to, like it is okay, you are safe, it is a police officer, you don't have to do that."

{¶ 13} Alexandra Brown testified that five or more men attacked Prescott. One punched him on the back of the head, and the group forced him to the ground. While he was on the ground, others kicked him in the ribs and his head. Prescott got back up and was knocked to the ground again. Afterwards, police arrived.

{¶ 14} Alexandra Brown testified that when Officer Davis arrived, she did not know he was a police officer. She testified that he was wearing a dark knit hat and dark jacket and she saw no emblems or patches on his jacket. She realized he was a police officer when Davis and Prescott fell to the ground. It was then that she saw a badge on the sleeve of his jacket. She testified that Prescott stopped when her sister screamed: "David, it is a cop. Stop."

{¶ 15} Under assignment of error No. I, Prescott argues that the trial court erred in instructing the jury "that a private citizen may not resist arrest by a law enforcement officer through the use of force." However, the trial court gave no such instruction. The trial court instructed:

{¶ 16} "When the situation involves the use of force against a law enforcement officer, a private citizen may not, in the absence of excessive or unnecessary force by an arresting officer, use force to resist arrest by one he knows, or has good

---

1. Katherine and Alexandra Brown are sisters. Appellant and Alexandra Brown were dating at the time of the incident. The three went together to the bar that night.

reason to believe, is an authorized police officer engaged in his duties, whether or not the arrest is legal under the circumstances."

{¶ 17} The instruction is an almost identical word-for-word restatement of the law announced by the Ohio Supreme Court in *Columbus v. Fraley* (1975), 41 Ohio St.2d 173, 70 O.O.2d 335, 324 N.E.2d 735, paragraph three of the syllabus. In the decision, the court strictly limited circumstances in which a citizen may use force against a police officer:

{¶ 18} "We agree with those courts and legislatures which have chosen to abandon the rule allowing forcible resistance to arrest. We believe it [is] essential that potentially violent conflicts be resolved, not in the streets, but in the courts. Thus, we hold that in the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." Id. at 180, 70 O.O.2d 335, 324 N.E.2d 735.

{¶ 19} The *Fraley* rule has been applied in instances involving investigatory stops and searches in addition to arrests. *State v. Haines* (Feb. 24, 1995), 6th Dist. No. L–94–023, 1995 WL 75297. Because the instruction accurately sets forth the law announced by the Ohio Supreme Court in *Fraley*, we find that appellant's first assignment of error is not well taken.

{¶ 20} Under assignment of error No. II, appellant argues that he was denied effective assistance of counsel at trial due to trial counsel's unfamiliarity with trial procedure. Appellant argues that trial counsel was deficient because she "was unaware of the procedural requirements of the Ohio Rule of Criminal Procedure 16(B)(1)(g) as it pertains to impeachment of a witness by a prior written or recorded statement." At the time of trial,[2] Crim.R. 16(B)(1)(g) provided:

{¶ 21} "Crim.R. 16 Discovery and inspection

{¶ 22} " * * *

{¶ 23} "(B) Disclosure of evidence by the prosecuting attorney

{¶ 24} "(1) *Information subject to disclosure.*

{¶ 25} "* * *

{¶ 26} "(g) In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement

---

2. Crim.R. 16 was amended effective July 1, 2010.

with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any between the testimony of such witness and the prior statement.

{¶ 27} "If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

{¶ 28} "If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon."

{¶ 29} Here, the state provided the defense during discovery with a copy of the report, prepared by Officer Lowery. Appellant argues that trial counsel failed to secure an in-camera inspection of the report or court approval of its use for impeachment before counsel attempted to cross-examine Lowery at trial based upon claimed inconsistencies between Lowery's trial testimony and his prior report.

{¶ 30} To prevail on a claim of ineffective assistance of counsel, a defendant must prove two elements: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Proof of prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

{¶ 31} The state argues that appellant was not prejudiced by counsel's error as to criminal trial procedure. Upon objection to the attempted use of the report to impeach, the court fully addressed the Crim.R. 16(B)(1)(g) issues in a side-bar conference and ruled on the merits whether the report could be used to impeach. Appellant does not claim that the trial court erred in refusing to permit use of the report for impeachment due to its finding, under Crim.R. 16(B)(1)(g), that no inconsistency existed between Officer Lowery's trial testimony and his written report.

{¶ 32} We agree that the record fails to support any claim of prejudice by counsel's initial failure to follow Crim.R. 16(B)(1)(g) procedure in cross-examining Officer Lowery. We find that the second assignment of error is not well taken.

{¶ 33} Under assignment of error No. III, appellant contends that the evidence was insufficient to support a conviction or, alternatively, that the conviction is against the manifest weight of the evidence at trial.

{¶ 34} An appellant is required under App.R. 12(A)(2) to separately argue assignments of error on appeal. Appellant provided no argument on this assignment of error other than to refer to earlier arguments under the first two assignments of error. In our discretion, we choose to consider the assigned error.

### Sufficiency of the Evidence

{¶ 35} Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Sufficiency of the evidence is purely a question of law. Id. Under this standard of adequacy, a court must consider whether the evidence was sufficient to support the conviction as a matter of law. Id. The proper analysis is " 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Williams* (1996), 74 Ohio St.3d 569, 576, 660 N.E.2d 724, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 36} Appellant was convicted of assault on a police officer, a violation of R.C. 2903.13(A) and 2903.13(C)(3). R.C. 2903.13(A) provides:

{¶ 37} "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶ 38} R.C. 2903.13(C) provides:

{¶ 39} "(3) If the victim of the offense is a peace officer * * *, while in the performance of their official duties, assault is a felony of the fourth degree."

{¶ 40} One of the issues submitted for jury consideration was self-defense. At the request of appellant, the trial court instructed the jury on self-defense through the use of nondeadly force. As part of that instruction, the trial court instructed that "[i]f the defendant used more force than reasonably necessary, if that force is greatly disproportionate to the apparent danger, then the defense of self-defense is not available."

{¶ 41} In *State v. Johnson*, 6th Dist. No. L–08–1325, 2009-Ohio-3500, 2009 WL 2096286, this court recognized:

{¶ 42} "There are limitations to the application of self-defense. The defense is not available unless the defendant shows that the force used to repel the danger was not more than the situation reasonably demanded. *Close v. Cooper* (1877), 34 Ohio St. 98, 100. 'One may use such force as the circumstances require.'

*Chillicothe v. Knight* (1992), 75 Ohio App.3d 544, 550, 599 N.E.2d 871. The defense is not applicable 'if the force is so grossly disproportionate to [the] apparent danger as to show revenge or an evil purpose to injure.' *State v. Weston* (July 16, 1999), 4th Dist No. 97CA31[, 1999 WL 552732]. 'The force used to defend must be objectively necessary and reasonable under the facts and circumstances of the case and in view of the danger apprehended.' *Martin v. Cent. Ohio Transit Auth.* (1990), 70 Ohio App.3d 83, 93, 590 N.E.2d 411. When one uses a greater degree of force than is necessary under all the circumstances, it is not justifiable on the ground of self-defense. *State v. McLeod* (1948), 82 Ohio App. 155, 157, 80 N.E.2d 699." Id. at ¶ 12.

{¶ 43} In addition to the instruction regarding self-defense and over appellant's objection, the trial court also instructed the jury as to the limited circumstances in which a private citizen may use force against police officers in the performance of their duties.

{¶ 44} Construing the evidence most favorably to the prosecution, in our view a rational trier of fact could have found beyond a reasonable doubt that appellant knowingly caused or attempted to cause physical harm to Officer Davis. A rational trier of fact could also have found beyond a reasonable doubt that Davis did not engage in the use of excessive or unnecessary force at the time he confronted appellant and attempted to stop the fight and that appellant knew or had good reason to believe that Davis was an authorized police officer engaged in the performance of his duties at the time. Such a determination would make the use of force against the responding police officer unavailable under *Fraley*.

{¶ 45} Even if a rational fact-finder were to find that appellant did not know or did not have good reason to believe that Davis was an authorized police officer engaged in the performance of his duties, a rational juror could have determined that appellant used more than necessary and reasonable force under the circumstances in view of the danger presented.

{¶ 46} As to enhancement of the seriousness of the offense under R.C. 2903.13(C)(3), a rational trier of fact could have found beyond a reasonable doubt that Davis was acting in the performance of his duties in attempting to break up a fight on a public street when the assault occurred.

{¶ 47} In our view, there was sufficient evidence in the record to support appellant's conviction of assault on a police officer.

### Manifest Weight of the Evidence

{¶ 48} A claim that a jury verdict is against the manifest weight of the evidence requires an appellate court to act as a "thirteenth juror." *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. An appellate court, " 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibili-

ty of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 49} In our view, although the case presented significant issues for jury resolution, the evidence did not weigh heavily against conviction and the jury acted reasonably within its province in rendering a guilty verdict. We conclude that the verdict convicting appellant of assault on a police officer is not against the manifest weight of the evidence. Accordingly, we find that the third assignment of error is not well taken.

{¶ 50} We conclude that substantial justice was done the party complaining. We affirm the judgment of the Wood County Court of Common Pleas. Appellant is ordered to pay the costs, pursuant to App.R. 24.

Judgment affirmed.

SINGER and COSME, JJ., concur.