[Cite as *In re J.P.*, 2017-Ohio-8508.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.P., Z.P.

Court of Appeals No. L-17-1100
L-17-1101

Trial Court No. JC 16257450
JC 16259295

**DECISION AND JUDGMENT**

Decided: November 9, 2017

* * * * *

Stephen Long, for appellant.

Bradley King, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is a consolidated appeal from a judgment of the Lucas County Court of

Common Pleas, Juvenile Division, which terminated the parental rights of appellant,

mother, and granted custody of the subject minor children, J.P. and Z.P., to appellee, Lucas

County Children Services ("LCCS"). For the reasons set forth below, the judgment of the trial court is hereby affirmed.

{¶ 2} On August 19, 2016, LCCS filed a complaint in dependency, neglect, and abuse, and a motion for shelter care hearing, regarding the minor child, Z.P. On October 28, 2016, following an adjudicatory hearing, Z.P. was found to be dependent, neglected, and abused. On November 14, 2016, counsel for appellant filed objections to the decision, thereby automatically, statutorily, staying disposition outside of the 90-day time limit established by R.C. 2151.35(B)(1).

{¶ 3} On December 2, 2016, LCCS filed a complaint in dependency, neglect, and abuse, and a motion for shelter care hearing, regarding the minor child, J.P. On January 9, 2017, a permanent custody pretrial was conducted in connection to both minor children. On February 22, 2017, an adjudicatory hearing commenced. On February 24, 2017, the trial court found the minor children to be neglected pursuant to R.C. 2151.03 and LCCS was awarded permanent custody. This appeal ensued.

{¶ 4} At the underlying February, 2017 permanent custody trial, an LCCS assessment investigative caseworker provided detailed testimony to the trial court. The caseworker testified that despite a governing order of the trial court mandating that all visitation between J.P. and the parents to be supervised, the paternal grandmother permitted extended, unsupervised visitation over a period of time of approximately three (3) weeks. This occurred despite a history of domestic violence between the parents, despite a recent child endangering indictment against J.P.'s father for an incident in which Z.P. sustained

2.

severe burns, and despite the order barring unsupervised visitation. In addition, during the above-referenced unlawful, unsupervised visitation, additional incidents of domestic violence occurred between the parents in the presence of J.P.

{¶ 5} LCCS next called the assigned court appointed special advocate ("CASA") to provide testimony to the trial court. The CASA testified that she was similarly assigned as the caseworker in prior cases involving several older siblings. Permanent custody of the older siblings had previously been awarded to LCCS based upon parental dependency, neglect, and abuse issues.

{¶ 6} The CASA testified, as also acknowledged by appellant, that J.P. was present during the latest domestic violence incidents. The CASA testified that the father had recently been convicted of felony child endangerment and sentenced to an 18-month term of incarceration in connection to serious physical injuries sustained by Z.P. The CASA further testified that she recommended that permanent custody of both children be awarded to LCCS based upon persistent domestic violence issues with the parents, and a consistent lack of concern by appellant regarding the physical safety of the minor children. Appellant's failure to recognize or protect the children from the known threat of physical harm posed to them by the father was noted as seriously compromising the safety and best interest of the children.

{¶ 7} Trial testimony was also provided by a treating pediatric occupational therapist with Mercy Children's Hospital. The therapist testified that although she had commenced treatment of Z.P. in November of 2014 for developmental delay issues

3.

connected to motor and visual skills, the treatment was ultimately discontinued based upon appellant's repeated failure to bring Z.P. to the scheduled appointments for necessary medical services.

{¶ 8} Z.P.'s foster mother next provided testimony to the trial court. Significantly, she testified that when Z.P. was returned into her foster care, following an approximate 7-month reunification between Z.P. and appellant, Z.P. had suffered severe burns to his legs, the top of his feet, and his private parts. In addition to the widespread burns, Z.P. also had sustained bruising on his face, a sizable bump on his upper right temple, and now presented with a sullen and emotionless affect, in contrast to the physical and mental wellness exhibited by Z.P. immediately prior to reunification with appellant.

{¶ 9} The foster mother further testified that upon return into her care from appellant's care, Z.P. exhibited new behaviors such as flinching, becoming easily startled, suffering night terrors, and pejoratively referring to himself as a "dummy." The foster mother conveyed that she took Z.P. to Harbor for treatment for night trauma and terrors and for needed services including physical therapy and speech therapy. She also testified that J.P. now exhibited aggression issues and was undergoing an assessment to determine if any specialized services were indicated.

{¶ 10} LCCS next provided the testimony of an ongoing caseworker assigned to the matter. She noted in her testimony that appellant consistently took no accountability for any of the incidents or injuries sustained by Z.P. The caseworker confirmed that appellant had previously lost permanent custody of her two older children. Significantly, the

4.

caseworker emphasized that appellant knowingly, repeatedly places the minor children in situations entailing a serious risk of harm to the children and continued to do so despite various services previously provided to appellant by the agency to avoid such conduct by appellant.

{¶ 11} Appellant called the paternal grandmother to testify on her behalf. The paternal grandmother, who had announced through counsel that she did not wish to be considered as custodian for the minor children, testified that she had no concerns regarding appellant's ability to care for the children. The paternal grandmother conceded permitting extended periods of unsupervised and overnight visitation, contrary to the judicial orders in place.

{¶ 12} Appellant herself next provided testimony to the trial court. Although appellant conceded that Z.P. sustained severe burns while in the care of the father, she nevertheless persisted in maintaining, contrary to the clear evidence, that there is no need to protect the children from the father. Appellant next unpersuasively claimed a total lack of memory regarding the governing court orders establishing limitations and restrictions on visitation between the children and their father for the safety of the children.

{¶ 13} At the conclusion of the trial, the trial court noted the father to be incarcerated for R.C. 2919.22(A) felony child endangerment convictions regarding serious physical injuries sustained by Z.P. The trial court found both children to be neglected children pursuant to R.C. 2151.414 and R.C. 2151.03 and found that the, "[L]ikelihood of

5.

recurrence of the neglect makes these children's placement with the parent [appellant] a threat to the children's safety."

{¶ 14} The court further held in pertinent part, "[Father] is now incarcerated for a projected sentence of 18 months. [Mother] continues to put her children at risk without showing any insight into her situation * * * [Mother] has been offered and exhaustive amount of case plan services and still demonstrates an inability to keep her children safe."

{¶ 15} The trial court also noted that due to appellant's prior loss of permanent custody of the older siblings of the subject children, pursuant to R.C. 2151.414 (E)(11) appellant bears the burden of proof by clear and convincing evidence in the instant case that appellant could provide adequate care for J.P. and Z.P.

{¶ 16} In the first assignment of error, appellant maintains that the trial court erred in finding the 90-day rule for the holding of a dispositional hearing statutorily waived due to appellant's filing of objections to the magistrate's ruling. We do not concur.

{¶ 17} Juv.R. 40(4)(e)(i) unambiguously establishes, "[T]he timely filing of objections to the magistrate's decision shall operate as an automatic stay of execution of the judgment until the court disposes of those objections."

{¶ 18} The record reflects that at the November 16, 2016 pretrial, the trial court thoroughly discussed the 90-day issue and all potential timeframe consequences arising from that rule upon the filing of objections. The record reflects that appellant made no objection to proceeding with the permanent custody trial despite the present, post hoc timeliness assertions. The record reflects that appellant proceeded to file the objections

6.

with full knowledge of the impact upon the 90-day requirement occurring automatically as a result of filing the objections.

{¶ 19} Wherefore, we find appellant's first assignment of error not well-taken.

{¶ 20} In appellant's second and third assignments of error, appellant maintains that the trial court judgments finding J.P. to be a neglected child and granting permanent custody to LCCS were against the manifest weight of the evidence. We do not concur.

{¶ 21} When determining whether a judgment is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and reasonable inferences, considers credibility of the witnesses and conflicts in the evidence, and determines whether the trier of fact clearly lost its way and caused a manifest miscarriage of justice. *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E. 2d 1092, ¶ 48 (6th. Dist.).

{¶ 22} R.C. 2151.04(A)(2) establishes that a child is neglected if the child, "[L]acks adequate parental care because of the faults or habit of the child's parents, guardian, or custodian."

{¶ 23} The record clearly reflects that despite her knowledge of serious physical injuries sustained by Z.P. when in the care of the father and despite court visitation orders put in place to protect the children, appellant nevertheless continued to refuse to acknowledge the risks posed to the children, consistently failed to comply with the protective orders thereby exposing the children to a known threat of harm, and refused to even acknowledge the risk of physical harm posed to the children by their father despite

7.

the father's current incarceration following his conviction for felony child endangerment connected to the children.

{¶ 24} The record reflects that despite the loss of permanent custody of the older siblings, despite being furnished extensive services by LCCS, and despite the incarceration of the children's father for felony child endangerment, appellant steadfastly to acknowledge the risk of harm posed to the children and refuses to take the steps necessary to protect the children.

{¶ 25} Given these facts and circumstances, the trial court properly found that LCCS made reasonable efforts to prevent removal of the children and undertook reasonable efforts working with the family towards a permanent plan for the children. The trial court properly found, and the record reflected, given the likelihood of a recurring threat to the children's safety, that the children's need for legally secure permanent placement cannot be achieved without a grant of permanent custody to LCCS.

{¶ 26} Wherefore, we find appellant's second and third assignments of error not well-taken.

{¶ 27} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is hereby affirmed. Cost of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

L-17-1100; L-17-1101

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                                              _____

                                                         JUDGE

Arlene Singer, J.                          

                                              _____

Thomas J. Osowik, J.                                        JUDGE

CONCUR.

                                              _____

                                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.