[Cite as *In re J.K.*, 2018-Ohio-4675.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.K.

Court of Appeals No. L-18-1125

Trial Court No. JC 13235356

**DECISION AND JUDGMENT**

Decided: November 20, 2018

* * * * *

Dan M. Weiss, for appellant.

Angela Y. Russell, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a May 2, 2018 judgment of the Lucas County Court

of Common Pleas, Juvenile Division, which terminated the parental rights of appellant,

father of the child, and granted custody of the child, J.K., to appellee, Lucas County

Children Services ("LCCS").  For the reasons set forth below, the judgment of the trial court is hereby affirmed.

{¶ 2} In July of 2012, approximately three months prior to the birth of the subject minor child, appellee became involved with the mother in connection to her other three minor children.  At that juncture, the pregnant mother and the other three children were residing in a Toledo area family homeless shelter based upon domestic violence issues that had occurred in the Cleveland area.

{¶ 3} In July of 2013, subsequent to the birth of J.K., appellee filed for protective supervision of all four children based upon the mother's failure to cooperate and complete recommended services needed by the children.  In addition, the mother would routinely send the children out of the area to stay with different relatives for extended periods of time, precluding the performance of various services needed for the children.

{¶ 4} On November 20, 2013, appellant was first identified as the alleged father of J.K. Following the naming of appellant as potentially being J.K.'s father, genetic testing was ordered.  The testing verified appellant's paternity of J.K.

{¶ 5} Appellee's assessment of the various needs of the family culminated in the ordering of case plan services including parenting classes, domestic violence services, and various counseling services tailored to the needs of the children.  In February 2014, the case was transferred to a different caseworker at the request of the mother.

{¶ 6} On April 22, 2014, a case hearing was conducted by the trial court.  It determined that reasonable efforts were being made by appellee with the family.  At that

2.

juncture, appellant was not participating in any services and his whereabouts were unknown.

{¶ 7} In August of 2016, a new ongoing caseworker was assigned to the family. The caseworker testified that during the period of her involvement, although she had successfully established contact with appellant, appellant declined to make himself available to provide any care for J.K., declined to participate in regular visitation with J.K., and declined to remain in communication with appellee or any of its representatives for purposes of following through on recommended services.

{¶ 8} In April of 2017, the ongoing caseworker conducted an in-person meeting with appellant. Appellant arrived significantly late, exhibited a strong odor of alcohol, and refused to cooperate with the requested urine screen in connection to same.

{¶ 9} As time progressed, appellant consistently declined to provide any care to J.K., declined to engage in regular visitation with J.K., declined to cooperate in services, and failed to exhibit any conduct demonstrative of either the capability or willingness to be a parent to J.K.

{¶ 10} In July of 2017, appellant conveyed to the caseworker, as witnessed by her supervisor, that he was experiencing his own "trials and tribulations," and that he could not provide a home or care to J.K.

{¶ 11} Faced with these circumstances, and at appellant's request, appellee attempted placement with appellant's sister. After several pre-placement visits with the

3.

child, appellant's sister withdrew herself from consideration and indicated she no longer wanted visitation, placement, or custody of J.K.

{¶ 12} Subsequent to the failure of the attempted placement with appellant's sister, appellant requested placement of the minor child with his mother, the paternal grandmother.

{¶ 13} On November 17, 2017, at a trial court hearing scheduled to explore the viability of such a placement, appellant and his mother arrived late, both were requested to provide urine screens due to concerns of drug and alcohol use, and both refused to comply with any screening regarding concerns of substance use.

{¶ 14} At one point, in an effort to facilitate needed services, appellee even offered free gasoline cards to appellant and his mother to cover their expense of driving to Toledo from Cleveland. They declined the offer of free gas cards and continued to not cooperate with services or visitation.

{¶ 15} The caseworker further conveyed that J.K. had been diagnosed with post-traumatic stress disorder, suffered from a range of serious emotional issues, and experienced difficulty sleeping. The caseworker testified that permanent custody being awarded to appellee was in the best interest of the child. The caseworker emphasized that appellant consistently demonstrated a lack of interest, a lack of stability, a lack of cooperation, a lack of visitation, and a lack a commitment to parent the child.

{¶ 16} The caseworker also relayed that appellee's ongoing concerns regarding appellant's excessive drug and alcohol consumption were collaborated by appellant's

4.

prior entanglements with Cuyahoga County in which drug and alcohol services were mandated.

{¶ 17} Although appellant eventually self-reported that he completed services, he declined to provide any proof or documentation to verify same. In addition, appellant continued to decline to participate in any of the various services and appointments necessitated by J.K.'s various special needs.

{¶ 18} Appellant next testified on his own behalf. Appellant relayed that he had first met the mother of the minor child in early 2012 but their relationship had only lasted a few weeks. Appellant conceded that he had failed to provide any of the requested documentation to appellee. Appellant conceded that he failed to cooperate with appellee in the requested urine screens due to his own belief that it was not "relevant." Appellant simultaneously, unconvincingly claimed that he had attempted to appear at one of the requested urine screens but experienced vehicle difficulties. The record is devoid of any evidence consistent with this claim.

{¶ 19} The record reflects that subsequent to the birth of J.K. and appellant's paternity later being established, appellant has never made any financial contributions towards the care of the child. Appellant indicated that he declined to do so because there was not a "court order" mandating him to do so.

{¶ 20} Appellant further acknowledged not communicating with the child, not corresponding in any way with the child, failing to participate in regular visitation with the child, declining to participate in services connected with the child, refusing to

5.

cooperate in drug and alcohol screening, but suggested that he nevertheless decided to, "take his chances" at legal custody of the child.

{¶ 21} Consistent with the above-described facts and circumstances, the assigned guardian ad litem unequivocally testified that a grant of permanent custody of the minor child to appellee was in the best interest of the child.

{¶ 22} The mother of the child testified that while the child was still living with her, appellant had come to visit on one occasion, had gotten highly intoxicated during the visit, and was ejected from the home by the mother.

{¶ 23} On May 2, 2018, the trial court awarded permanent custody of the minor child to appellee. This appeal ensued.

{¶ 24} In the first assignment of error, appellant maintains that the trial court erred in determining that appellee made reasonable efforts to reunify the minor child with appellant. We do not concur.

{¶ 25} We note that the record reflects compliance with R.C. 2151.414(E)(1) reasonable and diligent case plan effort requirements occurring within the requisite reasonable timeframe. Specifically, the record reflects that appellee attempted over the course of several years to work with appellant in numerous ways in an effort to give appellant the ability to establish his fitness as a parent, if appellant chose to do so.

{¶ 26} The record reflects that appellee attempted placements with several of appellant's relatives due to appellant's own unwillingness to pursue placement of the child himself. The record reflects that appellant's sister quickly withdrew herself from

6.

consideration of placement of the child, and appellant's mother refused to cooperate in substance use screenings to ensure the propriety of a placement with appellant's mother.

{¶ 27} The record reflects a consistent pattern throughout this case of appellant not communicating in any fashion with the child, declining visitation with the child, refusing to cooperate in drug and alcohol screenings, conceding his own unsuitability for possible placement of the child due to his own "trials and tribulations," refusing gas cards from appellee to cover appellant's expenses to travel from Cleveland to Toledo to visit his child, and failing to participate in the treatment and services required by the child's special needs.

{¶ 28} The record clearly reflects reasonable efforts on the part of appellee and reflects a lack of cooperation or progress by appellant. Wherefore, we find appellant's first assignment of error not well-taken.

{¶ 29} In appellant's second assignment of error, appellant maintains that the trial court award of permanent custody of the child to appellee was against the manifest weight of the evidence. We do not concur.

{¶ 30} When determining whether a disputed judgment is against the manifest weight of the evidence, this court must review the record, weigh the evidence, consider all reasonable inferences, and determine whether in resolving evidentiary conflicts the trier of fact clearly lost its way and caused a manifest miscarriage of justice. *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.).

7.

**{¶ 31}** In conjunction with this, it is well-established that the proper weight to be given to the evidence and to the credibility of witnesses is primarily for the trier fact. *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1992).

**{¶ 32}** Pursuant to R.C. 2151.414(B)(1)(a), the trial court may grant permanent custody of the child if the court determines by clear and convincing evidence that it is in the best interest of the child for permanent custody to be granted and also determines that the child is, "[N]ot abandoned or orphaned * * * the child cannot be placed with either of the child's parents within a reasonable time *or should not be placed with the child's parents*." (Emphasis added).

**{¶ 33}** We find that the record of evidence in this matter encompasses clear and convincing evidence that the best interests of the child was served by an award of permanent custody to appellee and that the child should not be placed with appellant. We further find the record is devoid of evidence that the trial court lost its way or caused a manifest miscarriage of justice. Wherefore, we find appellant's second assignment of error not well-taken.

**{¶ 34}** On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is hereby affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

8.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.     _____
              JUDGE

Thomas J. Osowik, J.

            _____
Christine E. Mayle, P.J.       JUDGE
CONCUR.

            _____
              JUDGE


This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.