[Cite as *State v. Maltos*, 2019-Ohio-4900.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio                                           Court of Appeals No.  H-18-023

    Appellee                                       Trial Court No.  CRI 2018-0508

v.

Seferino Juan Maltos                          **DECISION AND JUDGMENT**

    Appellant                                      Decided:  November 27, 2019

* * * * *

James Joel Sitterly, Huron County Prosecuting Attorney, and
Melissa A. Angst, Assistant Prosecuting Attorney, for appellee.

Thomas J. McGuire, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a November 9, 2018 judgment of the Huron County

of Common Pleas, sentencing appellant to a 30-month prison term following appellant's

convictions on one count of illegal conveyance of drugs onto the grounds of a government facility, in violation of R.C. 2921.36(A)(2), a felony of the third degree, two counts of conspiracy to commit illegal conveyance of drugs onto the grounds of government facility, in violation of R.C. 2923.01(A)(1), felonies of the fourth degree, and two counts of complicity to commit illegal conveyance of drugs onto the grounds of the government facility, in violation of R.C. 2923.01(A)(3), felonies of the third degree.

{¶ 2} The sentence was ordered to be served consecutively to a separate sentence that appellant was serving for prior drug convictions at the time that appellant committed the instant offenses while a prisoner at the Huron County Jail. This case stems from an attempted drug importation scheme orchestrated by appellant and his cellmates at the jail. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 3} Appellant, Serefino Juan Maltos, sets forth the following two assignments of error:

{¶ 4} "I. Whether appellant's conviction[s] [were] supported by sufficient evidence.

{¶ 5} "II. Whether appellant's sentence on a third-degree felony to a term of incarceration was an abuse of discretion."

{¶ 6} The following undisputed facts are relevant to this appeal. On January 25, 2018, appellant began serving a prison sentence in the Huron County jail for drug trafficking, drug possession, criminal tools, and weapons offenses separate from the

2.

instant offenses. Appellant was serving time in the jail on the above-referenced prior sentence when committing the crimes from which this appeal arises.

{¶ 7} At the jail, appellant was assigned to reside in a pod that he shared with fellow inmates Curtis Newsome and Randy Myers, the co-defendants in the underlying offenses. The space shared by the three inmates placed them in close proximity to one another during their tenure in the jail so as to enable their attempted coordination of the failed plot to smuggle drugs into the jail.

{¶ 8} The three podmates drew heightened scrutiny from jail personnel after the recovery of a letter containing suspicious content was discovered during a routine search of the pod by staff.

{¶ 9} On May 1, 2018, during a search conducted periodically for suspicious items in the jail pods, commonly referred to as a "shakedown", a discarded letter was retrieved from the trash in the pod shared by appellant and the co-defendants. The correspondence was addressed to Myers' girlfriend. Review of the content of the correspondence revealed that Myers was concerned about a $250.00 drug debt owed to podmate Newsome.

{¶ 10} Further surveillance efforts recovered a second letter that Myers had attempted to surreptitiously conceal within his power of attorney paperwork. This letter was addressed to Myers' sister. In this correspondence, which was recovered before it

3.

could be sent, Myers requested that his sister to meet with Newsome's wife, Aleesha Hardy, at a local store to pay off the drug debt that he owed to Newsome.

{¶ 11} Several weeks later, Myers' father passed away. Accordingly, Myers was granted a two-day furlough on May 23-24, in order to attend the funeral.

{¶ 12} The pending furlough invited further scrutiny of the podmates given that numerous attempts to smuggle unlawful items into the jail have been discovered and thwarted in connection to inmates temporarily out on furlough. Accordingly, jail staff began to more closely scrutinize the communications of the podmates.

{¶ 13} On May 23, 2018, the first day of Myers furlough, jail personnel monitored a phone conversation between appellant and one of his local friends. In that conversation, appellant advised his friend that appellant was going to have Hardy, Newsome's wife, contact appellant's friend by telephone. The surveillance consistently discovered that Newsome had simultaneously furnished his wife with the telephone number of appellant's friend who was going to be calling.

{¶ 14} The coordination by the two podmates with two separate local people to contact one another during Myers' furlough was highly suspicious and triggered additional investigatory efforts into the trio.

{¶ 15} Significantly, appellant's telephone conversation with his friend then changed to a thinly-coded discussion about "glass," which is commonly known by law enforcement to be lingo for the illegal drug methamphetamine. Appellant stated to the

4.

friend on a call, "[G]lass, glass, glass, glass it will fuck you up, the thicker the better * * * *you for real for real know what I mean*?"  (Emphasis added).

{¶ 16} Shortly thereafter, appellant placed several more monitored calls to another friend.  Appellant advised this person that he was going to have Hardy call him.  Appellant requested that this friend secure some, "stripper hoes," which is commonly known by law enforcement to be lingo for the illegal drug suboxone.  The friend agreed in the recorded, monitored conversation to secure the drugs.  Appellant then gave the friend Hardy's telephone number.

{¶ 17} Simultaneous with appellant's suspicious calls, Newsome likewise made multiple suspicious calls to Hardy.  The monitoring of these calls revealed that Newsome was requesting that Hardy likewise secure unlawful drugs, as well as the details of the funeral that Myers would be attending on furlough in order for Hardy to attend the funeral for purposes of pass the drugs to Myers prior to his return to the jail at the end of his furlough.

{¶ 18} Based upon the trove of information garnered during the inmate surveillance, reflecting a criminal drug scheme was being hatched by appellant and his podmates, arrangements were put into place to have Myers under surveillance while outside of the jail on the funeral furlough.

{¶ 19} Consistent with the surveillance knowledge, Hardy did appear at the funeral with unlawful drugs on her person intending to pass them over to Myers prior to

5.

his return to the jail in adherence with the plan, but she was ultimately unable to do so due to her admitted inability to definitively identify Myers among the crowd at the funeral.

{¶ 20} At the conclusion of the funeral, the undercover officers conducting the surveillance of the funeral, knowing that Hardy had failed to complete the handover of the drugs, initiated a traffic stop of Hardy.

{¶ 21} The officers recovered the unlawful drugs from Hardy. During their investigation and interview of Hardy, she confessed to the plan to pass the drugs to Myers in order for him to transport drugs into the jail.

{¶ 22} Hardy further conceded to communicating with appellant's friend who had similarly agreed to secure drugs to pass along to Myers for transport into the jail and delivery to appellant.

{¶ 23} Notably, shortly after Hardy was picked up by the police, appellant was monitored calling back one of the local friends and told him not to call again because they had been, "blown down," which is commonly known by law enforcement to mean that criminal schemes or plans have been discovered by law enforcement.

{¶ 24} On July 2, 2018, following these events, appellant was indicted on one count of illegal conveyance of drugs onto the grounds of government facility, in violation of R.C. 2921.36(A)(2), a felony of the third degree, two counts of conspiracy to commit illegal conveyance of drugs onto the grounds of the government facility, in violation of

6.

R.C. 2923.01(A)(1), felonies of the fourth degree, and two counts of complicity to commit illegal conveyance of drugs onto the grounds of a government facility, in violation of R.C. 2923.01(A)(3), felonies of the third degree.

{¶ 25} Again, appellant was already in jail serving a sentence on prior convictions at the time of engaging in this failed jailhouse drug importation plot.

{¶ 26} On November 6, 2018, appellant's new cases proceeded to a jury trial. On November 8, 2018, the jury found appellant guilty on all charges.

{¶ 27} On November 9, 2018, appellant was sentenced to a 30-month term of incarceration on the first of the offenses. The remaining offenses were merged into the first offense for sentencing purposes. The sentence was ordered to be served consecutively with the sentence appellant was already serving at the time of these crimes. This appeal ensued.

{¶ 28} In the first assignment of error, appellant maintains that the convictions were not supported by sufficient evidence. We do not concur.

{¶ 29} It is well-established that when evaluating a sufficiency of the evidence claim on appeal, the relevant inquiry is whether, after reviewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

7.

{¶ 30} R.C. 2921.36(A) defines illegal conveyance of drugs onto the grounds of the government facility, in relevant part, as, "[N]o person shall knowingly convey, *or attempt to convey*, onto * * * [prison grounds] * * * any drug of abuse." (Emphasis added).

{¶ 31} R.C. 2923.01(A) defines conspiracy to commit illegal conveyance of drugs onto the grounds of a government facility, in relevant part, as, "[N]o person, with purpose to commit or to promote or facilitate the commission of * * * a felony drug trafficking * * * offense * * * shall * * * with another person or persons, plan or aid in planning the commission of any of the specified offenses."

{¶ 32} R.C. 2923.03(A) defines complicity to commit illegal conveyance of drugs onto the grounds of government facility, in relevant part, as, "No person, acting with the kind of culpability required for the commission of an offense, shall * * * solicit or procure another to commit the offense."

{¶ 33} As applied to the instant case, the record reflects through the extensive trial testimony of the law enforcement officers and jail personnel involved in this matter, as well as a multitude of exhibits introduced into evidence, including recorded telephone conversations and correspondence, that appellant contacted several area individuals and instructed those individuals, using veiled drug lingo, to secure unlawful drugs for purposes of transport into the county jail during Myers' funeral furlough. These efforts

8.

were done in coordination with Newsome's phone calls similarly arranging for the drugs to be passed along to Myers by Newsome's wife at the funeral.

{¶ 34} Although these efforts ultimately failed in their objective, and the drugs were intercepted by the undercover officers, the record encompasses ample evidence of appellant's criminal culpability in the above-defined crimes. The record reflects evidence sufficient such that a rational trier of fact viewing the evidence in the light most favorable to the prosecution could find the elements of the crimes to have been demonstrated.

{¶ 35} In conjunction with this, appellant also maintains that the convictions were against the manifest weight of the evidence. We do not concur.

{¶ 36} It is well-established that when determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the record, weigh the evidence and all reasonable inferences drawn from said evidence, consider witness credibility and conflicts in the evidence, and determine whether the trier of fact clearly lost its way such that a manifest miscarriage of justice resulted, thereby necessitating a new trial. *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.).

{¶ 37} While appellant summarily concludes in support of the manifest weight argument that, "the jury lost its way [and] the evidence was confusing and discombobulated," our review of the record does not bear out this assertion.

9.

{¶ 38} The record reflects that all matters were properly explained, considered, and understood. The nature of this case in terms of the multiple conspirators involved, both inside of outside of the jail, and the superficially coded communications between the parties, in no way negated the ultimately clear and persuasive evidence presented at trial.

{¶ 39} There is nothing in the record of evidence reflecting that the trier of fact lost its way such that appellant's convictions constituted a miscarriage of justice.

{¶ 40} Wherefore, we find appellant's first assignment of error not well-taken.

{¶ 41} In appellant's second assignment of error, appellant contends that the trial court unlawfully imposed appellant's sentence in this case consecutively with the sentence that appellant was serving at the time he committed these offenses. We do not concur.

{¶ 42} It is well-established that appellate court felony sentence review is not done by the abuse of discretion standard. Rather, pursuant to R.C. 2953.08(G)(2), an appellate court may increase, decrease, modify, or vacate and remand a disputed felony sentence if it clearly and convincingly finds that either the record of evidence does not support applicable statutory findings, or the sentence is otherwise contrary to law. *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 11.

{¶ 43} In support of this assignment, appellant unconvincingly asserts simply that appellant was, "the least culpable of the players in the conspiracy." Appellant proceeds

to summarily conclude that, "[appellant's] consecutive sentence was disproportionate to his conduct." We do not concur.

{¶ 44} We note that the record does not reflect, nor is it asserted, that appellant's sentence was based upon applicable statutory findings not supported by the record or that it was in any way facially unlawful. Rather, appellant subjectively asserts that the sentence should have been, "closer to the minimum."

{¶ 45} Appellant's subjective perception of his level of culpability, in comparison to his cohorts, and his subjective belief that his non-maximum sentence should have been more on the minimum end of the scale is not germane to our determination. The record reflects that while appellant, who possesses an extensive criminal record, was already in jail on prior drug and weapons offenses, undertook a brazen effort to capitalize on a cellmate's funeral furlough in an effort to import illegal drugs into the jail.

{¶ 46} These facts exemplify a case in which the need to protect the public, the risk of recidivism, and the need to impose a sentence proportionate to the seriousness of the crimes are irrefutable and compelling. The record reflects that the prosecution requested a 36-month term of incarceration ordered to be served consecutive to the term of incarceration already being served. The trial court ultimately imposed a consecutive 30-month term of incarceration, six months less than was requested. We find that the record is devoid of any evidence that the disputed trial court sentence was in any way improper or unlawful. We find appellant's second assignment of error not well-taken.

**{¶ 47}** On consideration whereof, we find that substantial justice has been done in this matter. The judgment of the Huron County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.