[Cite as *In re J.J.*, 2020-Ohio-2971.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.J.

Court of Appeals No. L-19-1297

Trial Court No. JC 18267511

**DECISION AND JUDGMENT**

Decided: May 15, 2020

* * * * *

Adam H. Houser, for appellant.

Kevin J. Ankney, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a December 2, 2019 judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant, mother of the subject minor child, J.J., and granted custody of the child to appellee, Lucas County Children Services ("LCCS").

{¶ 2} We note that this appeal is narrow in scope. Appellant's principal argument on appeal is that the trial court erred, against the manifest weight of the evidence, in not granting appellant an additional extension of time in which to resume case plan services, which appellant had unsuccessfully ceased prior to the permanent custody filing.

{¶ 3} Appellant does not dispute the substantive merits of the chief trial court determinations that LCCS made the requisite R.C. 2151.419 reasonable efforts in this case prior to pursuing permanent custody, and does not dispute that the award of permanent custody to LCCS was in the best interest of the child pursuant to R.C. 2151.414(D)(1).

{¶ 4} In support of the judgment in favor of appellee, the trial court cited the irrefutable evidence of appellant's ongoing drug dependency, including usage of crack cocaine, oxycodone, and marijuana, appellant's ongoing unstable housing, appellant's unsuccessful discharge from mental health services, appellant's ongoing involvement with an abusive significant other, and the lack of a suitable relative placement.

{¶ 5} The facts and evidence underpinning these trial court determinations reflect that custody restoration between appellant and the minor child was not viable and the award of permanent custody to LCCS was in the best interest of the child.

{¶ 6} As referenced above, appellant principally asserts on appeal that she should have been granted another extension of time in order to resume participation in case plan services, which appellant had ceased approximately three months prior to the permanent custody filing.

2.

{¶ 7} Unfortunately, the record of evidence reflects appellant's lack of engagement in services, lack of acknowledgment of the serious underlying issues, and lack of progress in the chief areas of concern. Accordingly, assertions that another extension of time was warranted are without merit. For the reasons set forth more fully below, the judgment of the trial court is hereby affirmed.

{¶ 8} On March 7, 2018, LCCS filed a complaint in dependency and neglect, in addition to a motion for an emergency shelter care hearing, pertaining to appellant's minor child, J.J. LCCS had familiarity with appellant as the permanent custody of a sibling of J.J. had previously been awarded to LCCS.

{¶ 9} On August 15, 2018, J.J. was adjudicated to be a dependent child. Accordingly, temporary custody was granted to LCCS. On September 17, 2018, a trial court case status hearing determined that LCCS was making the requisite statutory reasonable efforts in this case.

{¶ 10} On March 7, 2019, appellee was granted a six-month extension of temporary custody of the minor child. In May of 2019, appellant ceased engagement in LCCS case plan services.

{¶ 11} On July 23, 2019, LCCS filed a motion for permanent custody in this matter. On November 14, 2019, the permanent custody adjudicatory hearing was conducted. On December 2, 2019, the trial court found, "by clear and convincing evidence that the child cannot be placed with either of the child's parents within a reasonable time [the father is deceased], or should not be placed with the child's mother,

3.

pursuant to R.C. 2151.414(B)(1)(a)." Pursuant to R.C. Chapter 2151, the minor was determined to be a dependent child. LCCS was awarded permanent custody. This appeal ensued.

{¶ 12} The record reflects that at the November 14, 2019 permanent custody trial, the trial court first heard detailed testimony from the assigned LCCS caseworker. The caseworker's testimony delineated that based upon the agency investigation into this matter, the primary case plan services required for appellant included substance abuse services, mental health services, domestic violence services, as well as services pertaining to appellant's chronic unstable housing.

{¶ 13} The testimony of the caseworker, consistent with the documentation submitted by appellant's substance abuse service providers, reflected that although appellant initially participated in substance abuse services, she subsequently discontinued all services.

{¶ 14} In conjunction with this, appellant consistently minimized her severe drug dependency issues. Despite being furnished with the necessary drug dependency services, prior to the permanent custody filing appellant tested positive for oxycodone, marijuana, and acknowledged her continued usage of crack cocaine.

{¶ 15} With respect to appellant's ongoing crack cocaine usage, she unconvincingly denied drug dependency issues. Appellant downplayed her use of crack cocaine as "a choice," that she could cease any time of her own accord.

4.

{¶ 16} Not surprisingly in light of the above, the record reflects that appellant's drug dependency issues persist. Appellant has failed to demonstrate progress on, or an acknowledgement of, the seriousness of the issue and the need for it to change.

{¶ 17} In May 2019, appellant ceased participation in all case plan services, including drug abuse services. Approximately three months after appellant's cessation of case plan services, LCCS filed for permanent custody.

{¶ 18} With respect to the needed mental health services, the trial testimony reflected that appellant's participation and compliance with those services has been sporadic. Appellant was discharged unsuccessfully from those services prior to the permanent custody filing.

{¶ 19} The caseworker testimony pertaining to the needed domestic violence services reflected that appellant's significant other, whom appellant herself acknowledges is abusive, failed to participate in the needed services. In addition, appellant's own participation in domestic violence related services was unable to proceed due to appellant's failure to demonstrate progress in substance abuse services so that domestic violence services could commence.

{¶ 20} Although appellant maintained that she had ceased her relationship with her abusive significant other, the record inconsistently reflects that appellant still refers to the abuser as "her man," remains in regular contact with him, and continues to depend upon him in multiple ways. The record reflects that appellant's domestic violence issues, implicating the safety of the minor child, have not been remediated.

5.

{¶ 21} With respect to appellant's persistent unstable housing, the trial testimony and related documentary records reflect that appellant's housing history during the relevant time frame has ranged from staying in a hotel, staying in her car, staying with friends, staying in various area housing shelters, and spans of time in which her whereabouts were unknown. The record reflects that appellant's highly unstable housing situation has not been remediated.

{¶ 22} The trial testimony of the LCCS caseworker and the assigned guardian ad litem ("GAL") detailed the considerable reasonable efforts undertaken by the agency in an effort to locate an acceptable alternative family placement for the minor child. Unfortunately, no suitable placement was found to be available.

{¶ 23} A potential placement with a maternal aunt was explored. However, the child ultimately had to be removed from that placement as the relative was not successfully ensuring that the minor child participated in required services, in addition to exposure to substance abuse issues, adverse to the best interests of the minor, in that placement.

{¶ 24} Subsequently, a potential placement was explored with a maternal uncle. However, further investigation revealed that this relative possessed a disqualifying criminal history, including the past sexual assault of a sibling.

{¶ 25} Notably, concerns regarding the unsuitability of potential relative placement with the uncle had previously been expressed by appellant herself to those involved in this case, including the GAL and the caseworker.

6.

{¶ 26} The record reflects that both the caseworker and the GAL ultimately concluded and testified that it would be in the best interest of the minor child for permanent custody to be awarded to appellee.

{¶ 27} During her testimony to the trial court, appellant did not refute the above-described circumstances. Rather, appellant requested another extension of time based upon the unilateral representation that, if granted, she would return into the above-described needed services in an effort to address the underlying issues. However, the bulk of evidence in this matter runs counter to the credibility of those representations.

{¶ 28} At the conclusion of the trial, pursuant to R.C. 2151.414(B)(1)(a), the trial court found by clear and convincing evidence that the father of the minor child is deceased, and that the minor child should not be placed with the mother. The trial court further determined, pursuant to R.C. 2151.414(E)(1), the mother had failed consistently and repeatedly to substantially remedy the conditions that preclude the child's placement with the mother, pursuant to R.C. 2151.414(E)(2), the mother's severe chemical dependency issues, including ongoing use of oxycodone, crack cocaine, and marijuana, preclude her provision of an adequate permanent home for the child, and pursuant to R.C. 2151.414(E)(11), the mother's parental rights had been involuntarily terminated on a previous occasion with respect to a sibling of the subject minor child.

{¶ 29} Accordingly, given these facts and circumstances, the trial court determined pursuant to R.C. 2151.414(D)(1)(c) and (d), an award of permanent custody

of J.J. to LCCS is in the best interest of the child as a legally safe, secure, and permanent environment must be provided for the child. This appeal ensued.

{¶ 30} In the sole assignment of error, appellant unpersuasively maintains that the trial court erred and acted against the manifest weight of the evidence in denying appellant's request at trial for an additional extension of time in which to attempt to successfully engage in the services mandated by LCCS as prerequisites for a potential reunification. We do not concur.

{¶ 31} It is well-established that in determining whether a disputed trial court judgment is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and reasonable inferences, considers the credibility of the witnesses and conflicts in the evidence presented, and determines whether the trier of fact clearly lost its way so as to cause a manifest miscarriage of justice. *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.).

{¶ 32} In support of this appeal, appellant contends that the relevant parties, "did not do any investigation into the [potential placement of the child with the] family member [the above-discussed maternal uncle] in Illinois." The record of evidence does not bear out this claim.

{¶ 33} Contrary to this assertion on appeal, the record reflects that prior to these proceedings, appellant herself expressed concerns to both the LCCS caseworker and the GAL regarding the impropriety of a potential placement of the minor child with the maternal uncle from Illinois.

8.

{¶ 34} Appellant conveyed to them that her uncle had a criminal record, had sexually assaulted a sibling, and would not be a suitable placement. The subsequent home study conducted regarding the uncle verified the disqualifying background of the uncle.

{¶ 35} The testimony of the GAL similarly detailed his discussions with both appellant and the caseworker regarding a potential placement with the uncle. The discussions made clear the consensus amongst all parties, including appellant, that any such placement was ill-advised given the uncle's concerning criminal history, including the prior sexual assault of a sibling.

{¶ 36} In addition, we note that the uncle declined to file an entry of appearance in this matter, or otherwise seek custody of the minor child. Further, prior to this appeal, appellant never conveyed to the court, or otherwise notified anyone involved in this matter, of a desire for custody to be granted to the uncle. Appellant conveyed a contrary position regarding the uncle, undercutting her present claim.

{¶ 37} Accordingly, appellant's present assertion that the trial court failed to give proper consideration to an alternative relative placement of J.J. with the above-discussed maternal uncle is contrary to the record of evidence, contrary to appellant's own prior position on the matter, and without merit.

{¶ 38} Given these facts and circumstances, the trial court properly found that LCCS made reasonable efforts to prevent the removal of the minor child and undertook reasonable efforts working with the mother towards a permanent plan for reunification

9.

with the minor child.  The trial court further properly found, and the record clearly shows that the child's need for a legally secure permanent placement could not be achieved without a grant of permanent custody of the child to LCCS.

{¶ 39} The record is devoid of evidence showing that the trial court clearly lost its way and caused a manifest miscarriage of justice in this matter.

{¶ 40} Wherefore, we find appellant's sole assignment of error not well-taken.

{¶ 41} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is hereby affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.             _____
                                                JUDGE
Thomas J. Osowik, J.             

Christine E. Mayle, J.            _____
CONCUR.                                             JUDGE

_____
                                                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.