[Cite as *State v. Walker*, 2020-Ohio-5043.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Maumee            Court of Appeals No. L-19-1214

      Appellee            Trial Court No.

v.

Michael A. Walker            **DECISION AND JUDGMENT**

      Appellant            Decided:  October 23, 2020

* * * * *

John B. Arnsby, City of Maumee Prosecutor, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} This is an appeal from the September 12, 2019 judgment of the Maumee Municipal Court finding appellant, Michael Walker, guilty of sexual imposition.  For the reasons that follow, we affirm the judgment.

{¶ 2} Appellant sets forth two assignments of error:

I. Appellant's conviction for sexual imposition was supported by insufficient evidence.

II. Appellant's conviction for sexual imposition was against the manifest weight of the evidence.

{¶ 3} As these assignments of error are related, they will be considered together.

{¶ 4} On October 1, 2017, E.F. and her older sister drove to the movie theater in Maumee, Ohio, where they met the sister's boyfriend and appellant. The boyfriend and appellant, who rode together to the movie theater, were friends and had been "hanging out" that day. Appellant was 18 years old and E.F. was 15 years of age at that time. E.F., her sister and appellant had known each other for about ten years, and thought of themselves as cousins or family, as appellant's mother dated E.F. and her sister's uncle.

{¶ 5} On that October day, E.F. was wearing jeans and appellant was wearing shorts. In the movie theater, E.F. and appellant sat in the same row, next to each other, with perhaps a seat separating them. E.F.'s sister and her boyfriend sat in the row in front of E.F. and appellant or possibly in the same row. Before the movie, the group was talking and joking. Once the movie started, appellant watched the movie and ate popcorn.

{¶ 6} During the movie, E.F. stretched out over several seats, with her feet towards appellant, and she fell asleep. E.F. said "when I woke up his [appellant's] hands was inside my pants." E.F. said her zipper was open and "his [appellant's] hand was

2.

through my zipper." E.F. got up without speaking to appellant, and went to the bathroom. There, E.F. texted her sister "Im ready to go rn [right now] mike [appellant] was trying to touch me dont tell [your boyfriend] I was asleep and i woke up and i felt him touching me but I couldn't move im in the bathroom rn[.]" E.F.'s sister met E.F. in the bathroom. They talked and E.F. told her sister that she could tell her boyfriend. The sister went back into the theater and got her boyfriend, and then she and E.F. told the boyfriend.

{¶ 7} By this time, the movie had ended. E.F. and her sister walked out of the theater and went to their car, and the boyfriend and appellant walked out and met E.F. and her sister at the cars. The sister and her boyfriend stood around talking for a few minutes, while E.F. was sitting in the car and appellant was on his phone. E.F. and her sister drove off and went home, and the boyfriend and appellant went to a park.

{¶ 8} When E.F. and her sister got home, the sister told their aunt what happened. The aunt then told E.F.'s mother. The police were called and E.F., her sister, and their mother went to the police station where they were interviewed by a police officer. E.F. and her sister showed the officer the text message, and E.F. drew a diagram of where the group was sitting in the movie theater, showing everyone sitting in the same row. E.F. and her sister gave statements to the police. The officer went to E.F.'s house, collected her jeans and underwear and sent the items to the Ohio Bureau of Criminal Investigation ("BCI").

3.

**{¶ 9}** The officer contacted appellant, and on October 6, 2017, the officer went to appellant's address and advised appellant of the complaint. Appellant confirmed that he knew E.F. and her sister, and that he was at the movies with them. The officer said appellant stated E.F. sat next to him, he put his legs over E.F.'s feet and put his legs over her while she was sleeping. Appellant denied making any inappropriate touches. Appellant consented to giving a DNA sample, which the officer sent to BCI.

**{¶ 10}** On December 15, 2017, a complaint was filed against appellant in Maumee Municipal Court, charging him with one count of sexual imposition in violation of R.C. 2907.06(A)(1), a third-degree misdemeanor. R.C. 2907.06(A)(1) provides in relevant part "[n]o person shall have sexual contact with another, not the spouse of the offender; * * * when [t]he offender knows that the sexual contact is offensive to the other person, * * * or is reckless in that regard."

**{¶ 11}** On July 25, 2019, a bench trial was held. E.F., her sister, the police officer and a forensic scientist from BCI testified for the state, and appellant testified in his own defense. The scientist testified she was supplied with E.F.'s jeans and underwear, and appellant's DNA sample. The scientist examined E.F.'s jeans, and took swabs from the button and zipper area. A DNA profile was produced, which was a mixture that included appellant's DNA profile. The scientist examined E.F.'s underwear and tested two samples, one from the exterior front panel, and one from the interior crotch and front panel of the underwear. A DNA profile was produced, which was a single source from an unknown female; appellant's DNA profile was excluded from the underwear samples.

4.

{¶ 12} Appellant was convicted of sexual imposition. On September 12, 2019, appellant was sentenced to 60 days in jail, with 30 days suspended, he was fined $500, he was placed on three years of inactive probation, and he was ordered to register as a Tier I sexual offender. Appellant timely appealed.

**Assignments of Error**

{¶ 13} With respect to the sufficiency of the evidence, appellant asserts the issue is whether the state presented sufficient evidence to prove, beyond a reasonable doubt, that he touched E.F.'s erogenous zone for the purpose of sexual gratification. Appellant contends that although E.F. testified that his hands were in her pants, there was no corroborating evidence that his DNA was anywhere but on the outside of her pants. Appellant argues that without any indication he actually touched her underwear, there was no evidence that he was sexually aroused or had sexual intent, and the assumption of sexual intent is purely speculative. Appellant notes that without sufficient evidence of sexual intent, his conviction is not supported by the evidence.

{¶ 14} In the alternative, appellant submits his conviction was against the manifest weight of the evidence as there was no evidence that he touched E.F.'s underwear or made any overtures of a sexual nature. Appellant acknowledges the touching of E.F. and her clothing by hands or legs was arguably offensive, but sexual imposition requires more than offensive touching. Appellant further observes the diagram that E.F. drew, during her police interview, of the group's seating arrangement in the movie theater and E.F.'s

5.

trial testimony differed, but E.F. insisted her testimony was more accurate and her sister sat in front of her and did not see any alleged touching.

**Law**

{¶ 15} R.C. 2907.06 provides in relevant part:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

(B) No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence.

{¶ 16} Sexual contact is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region * * * for the purpose of sexually arousing or gratifying either person."  R.C. 2907.01(B) "contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying."  *State v. Astley*, 36 Ohio App.3d 247, 250, 523 N.E.2d 322 (10th Dist.1987).  When there is no direct testimony of sexual arousal or sexual gratification, the trier of fact may infer a purpose of sexual arousal or sexual gratification from the "'type, nature and circumstances of the contact,

6.

along with the personality of the defendant.'"  (Citations omitted.)  *Toledo v. Jones*, 6th Dist. Lucas Nos. L-17-1220, L-18-1096, L-18-1097, L-18-1098, 2019-Ohio-237, ¶ 22.

{¶ 17} A person acts knowingly when he or she is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature.  *See* R.C. 2901.22(B).  A person acts recklessly "when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature."  *See* R.C. 2901.22(C).

**Standards**

**Sufficiency of the Evidence**

{¶ 18} "A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law."  *State v. Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317, ¶ 28, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), *superseded by statute and reversed on other grounds by State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997).  During a sufficiency of the evidence review, an appellate court's function is to "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as stated in Smith*.  "The relevant inquiry is whether, after

7.

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus.

**Manifest Weight**

{¶ 19} The standard of review for manifest weight is the same in a criminal case as in a civil case, and an appellate court's function is to determine whether the greater amount of credible evidence supports the verdict. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; *Thompkins* at 387. "A manifest weight of the evidence challenge contests the believability of the evidence presented." (Citation omitted.) *State v. Wynder*, 11th Dist. Ashtabula No. 2001-A-0063, 2003-Ohio-5978, ¶ 23. When determining whether a conviction is against the manifest weight, the appellate court must review the record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility and decide, in resolving any conflicts in the evidence, whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *Thompkins* at 387.

{¶ 20} It has long been held that the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to decide. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1992). When reviewing a manifest weight of the

8.

evidence challenge, an appellate court sits as the "thirteenth juror." *Prescott* at ¶ 48, citing *Thompkins* at 387.

**Analysis**

{¶ 21} The trial judge determined that based on the law, testimony and evidence, appellant was guilty of sexual imposition. Upon review, we find the trier of fact could reasonably conclude that appellant had sexual contact with E.F., as evidence was presented that appellant touched E.F.'s pubic region when he unzipped her jeans and put his hand or hands down her pants. *See* R.C. 2907.01(B). The evidence included E.F.'s testimony, the DNA results from the zipper region of E.F.'s jeans, the text message sent by E.F. to her sister, and the sister's testimony. We find the testimony, coupled with the DNA results and text message, was sufficient corroboration under R.C. 2907.06(B).

{¶ 22} There was also evidence from which the trier of fact could infer that the sexual contact was made for the purpose of sexually arousing or sexually gratifying appellant. A reasonable person would perceive unzipping another person's pants and putting a hand down the front of the pants as sexually stimulating or gratifying. In addition, there was evidence that appellant knew the sexual contact was offensive to E.F., or was reckless with regard to whether it was offensive, as E.F. was asleep while some of the contact occurred, E.F. considered appellant to be like a cousin, and appellant said E.F. was like family.

{¶ 23} Viewing the evidence in a light most favorable to the state, we find there was sufficient evidence to support appellant's conviction for sexual imposition. The

testimony and evidence presented at trial were sufficient to permit the trier of fact to find all elements of sexual imposition were proven beyond a reasonable doubt. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 24} Further, after reviewing the testimony and evidence presented at trial, we conclude the trier of fact did not clearly lose its way in finding appellant guilty of sexual imposition. Despite appellant's testimony and his denial that he touched E.F.'s crotch or underwear with his hands, the judge also heard the testimony of E.F., her sister, the police officer and forensic scientist, and was able to observe the demeanor of all of the witnesses, including their non-verbal and emotional responses. Based on the record, we cannot conclude the trier of fact clearly lost its way and created a manifest miscarriage of justice. The evidence offered by the state satisfied every element of a sexual imposition conviction and does not weigh heavily against the conviction. Therefore, appellant's conviction was not against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is not well-taken.

{¶ 25} The judgment of the Maumee Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____
                                                              JUDGE

Arlene Singer, J. _____

                                    _____
Gene A. Zmuda, P.J. _____          JUDGE
CONCUR.

                                    _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.